[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 31, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15546
Non-Argument Calendar

_____

BIA No. A79-505-712

LUIS FERNANDO MEJIA,
ANA LUCIA MEJIA,

                                                        Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(October 31, 2005)**

Before TJOFLAT, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Luis Fernando Mejia (Luis) and his sister, Ana Lucia Mejia (Ana),

petitioners, are citizens of Columbia, S.A. On April 8, 2001, Ana was admitted to the United States on a non-immigrant visa with authorization to remain until October 7, 2001. On July 22, 2001, Luis was admitted to the United States on a non-immigrant visa with authorization to remain until January 21, 2002. Both aliens filed timely applications for asylum with the Immigration and Naturalization Service ("INS").[1] In his application, Luis alleged that, in Columbia, he worked for the Quaker Oats Company as an import-export coordinator and actively participated in Columbia's liberal party and that because of his party activity, the National Liberation Army ("ELN"), a guerrilla group, beat him and threatened to kill him and his family. In her application, Ana alleged that she also actively participated in the liberal party; she sought asylum based on the ELN's actions against Luis.

After an asylum officer interviewed petitioners and then denied their applications, the INS charged them with removability under the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), and referred them to an Immigration Judge ("IJ") for a hearing on their applications. At that hearing, petitioners, represented by counsel, conceded their removability and asserted their claims for asylum. Alternatively, they sought withholding of removal under the

---

[1] The INS has been replaced by the Department of Homeland Security. For convenience, we refer to the Department as INS.

2

INA and the Convention Against Torture ("CAT") based on their fear of being persecuted by a guerrilla organization if returned to Columbia. After hearing petitioner's testimony and considering the State Department's 2001 and 2002 Country Reports on Human Rights Practices for Columbia ("Country Reports"), the IJ denied petitioner's applications for asylum and withholding of removal. The IJ found that the ELN persecuted Luis not on account of his political opinion but because it needed him, as import-export coordinator for Quaker Oats, to assist it in drug smuggling.

Petitioners appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA summarily affirmed the decision without opinion. Because the BIA affirmed the IJ's decision in this manner, the IJ's decision is the object of our review. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review the IJ's legal determinations de novo, Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001), and her factual determinations under the highly deferential substantial evidence test, Forgue v. United States Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under that test, we affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Id. We reverse only if the evidence would compel a reasonable fact finder to find otherwise. Sepulveda v. Ashcroft, 401 F.3d 1226, 1230 (11th Cir. 2005).

3

In their petition for review, petitioners contend that the IJ erred in finding (1) that they were not persecuted by the ELN on account of their imputed political opinions and thus were not entitled to asylum or withholding of removal, and (2) that they were not persecuted by, at the instigation of, or with the consent or acquiescence of, the Colombian government or someone associated with that government and thus were not entitled to CAT relief.

## I.

An alien who arrives in or is present in the United States may apply for asylum. See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the definition of a "refugee." See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality . . ., and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution **on account of** race, religion, nationality, membership in a particular social group, or **political opinion** . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added). The asylum applicant carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); Al Najjar, 257 F.3d at 1284. To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor—in this case, political opinion— or (2) a "well-founded fear"that such

4

factor will cause future persecution. 8 C.F.R. § 208.13(b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion [or other statutory factor]." Id. (internal quotations and citation omitted) (emphasis in original). An asylum applicant may not just show that he has a political opinion, but must show that he was persecuted because of that opinion. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992). We "will reverse the denial of asylum only if the evidence presented by the applicant is so overwhelming 'that a reasonable fact finder would *have* to conclude that the requisite fear of persecution exists.'" Al Najjar, 257 F.3d at 1290 (emphasis in original).

Moreover, we have held that "'[a]n imputed political opinion, whether correctly or incorrectly attributed,' may constitute a ground for a 'well-founded fear' of political persecution within the meaning of the INA." Id. at 1289 (citations omitted). "An asylum applicant may prevail on a theory of 'imputed political opinion' if he shows that the '[p]ersecutor falsely attribute[d] an opinion to [him], and then persecute[d him] because of that mistaken belief about his views.'" Id. (citations and quotations omitted).

An alien seeking withholding of removal under the INA must show that his life or freedom would "more likely than not" be threatened upon return to his

5

country because of, among other things, his political opinion. <u>Sanchez v. United States Att'y Gen.</u>, 392 F.3d 434, 437 (11th Cir. 2004); <u>see also</u> 8 U.S.C. § 1231, INA § 241(b)(3). This standard is more stringent than the "well-founded fear" standard for a grant of asylum. <u>D-Muhamed v. United States Att'y Gen.</u>, 388 F.3d 814, 819 (11th Cir. 2004). Thus, if an applicant cannot meet the asylum standard, the applicant cannot meet the withholding of removal standard. <u>Id.</u>

In the case at hand, the IJ found credible Luis's testimony that he suffered past persecution by the ELN. In contrast, Ana admitted that the ELN never directly threatened or harmed her. Thus, Luis did not have to demonstrate a "well-founded fear of persecution" to the extent he proved past persecution, while Ana had to make such a demonstration because she admittedly failed to prove past persecution.

Concerning Ana, her "well-founded fear of persecution" claim relies solely on her belief that the ELN would torture her upon her return to Colombia in order to punish Luis. She never alleged, nor did she testify, that she feared persecution based on her race, religion, nationality, membership in a particular social group, or political opinion. Indeed, she admitted that she was not even in Colombia when her brother was persecuted. Although she alleged that she was a member of Colombia's liberal party, she offered no evidence that the ELN knew of her political opinions or would persecute her because of them. Thus, the IJ's decision

6

denying her asylum claim is supported by substantial evidence. See Al Najjar, 257 F.3d at 1287.

Ana also relies on the claim that Luis was persecuted on account of his imputed political opinion. That claim fails because substantial evidence shows that even if Luis was persecuted, it was not "on account of" his imputed political opinion. For instance, nothing in the record indicates that the ELN knew, or had any interest in, his political beliefs. Rather, based on his own testimony, the ELN threatened him only after learning that he worked for Quaker Oats Company as its import-export coordinator, a position that could assist the ELN in its drug smuggling operations. Petitioners seem to say that Luis's refusal to assist the ELN somehow imputed to the ELN knowledge that Luis disagreed with the ELN's political beliefs.

Petitioners' reliance on the imputed political opinion doctrine is misplaced. Under that doctrine, an applicant may prevail if he shows that a persecutor falsely attributes an opinion to him, and persecutes him based on that opinion. See Al Najjar, 257 F.3d at 1289. This is not the case here, as petitioners do not contend that the ELN falsely attributed a political opinion to them. Rather, they argue that the ELN persecuted them based on their actual political opinions.

The record demonstrates that Luis may have suffered past persecution, and may have had a political opinion, but it does not show that he was persecuted "on

account of" that political opinion.  See Elias-Zacarias, 502 U.S. at 483, 112 S.Ct. at 816.  Instead, the record indicates that he was persecuted for failing to cooperate with the ELN in its drug smuggling operations.  Showing that he was persecuted for that reason was not enough to carry the day.

Substantial evidence exists in the record to support the IJ's determination that petitioners were not persecuted on account of their political opinions, imputed or otherwise.  Because petitioners could not satisfy the asylum standard, they could not meet the withholding of removal standard.  D-Muhamed, 388 F.3d at 819.  In sum, the IJ did not err in finding that petitioners were not entitled to asylum or withholding of removal under the INA.

## II.

To obtain withholding of removal under the CAT's implementing regulations, an alien "must show that it is more likely than not that [the alien] will be tortured in [his or her] home country at the hands of [the] government or that [the] government will acquiesce in the torture."  Sanchez, 392 F.3d at 438; see also 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1).

Here, substantial evidence supports the IJ's findings that upon their return to Columbia, petitioners are not more likely than not to be tortured by the Colombian government, or that the Colombian government will acquiesce in their torture.  Nothing in the record indicates that the Colombian government assisted or

8

acquiesced in the ELN's persecution of Luis. Rather, Luis testified that Colombian authorities offered to assist him in apprehending the members of the ELN who persecuted him. Further, in their brief, petitioners rely on the 2003 Country Report, which is not part of the administrative record.[2] As such, we will not consider it. See Al Najjar, 257 F.3d at 1303. Nonetheless, in considering the 2001 and 2002 Country Reports that are part of the record, it appears as if the ELN is involved in a major armed conflict against the Colombian government, which further undermines petitioners' claims of governmental participation or acquiescence. Thus, the IJ's findings are supported by substantial evidence, and the IJ did not err in finding that petitioners were not entitled to CAT relief.

Petitioners failed to carry their burden of proof for asylum, withholding of removal, and CAT relief.

**PETITIONS DENIED.**

---

[2]We note that the 2002 Country Report indicates a release date of March 31, 2003, which may be what petitioners are referring to.