[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 15, 2006
THOMAS K. KAHN
CLERK

No. 06-10747
Non-Argument Calendar
_____

Agency No. A97-191-319
A97-191-320

MARIA BEATRIZ CHAVARRO AGUILERA,
HENRY SERNA GOMEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(August 15, 2006)**

Before DUBINA, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Maria Beatriz Chavarro Aguilera, also on behalf of her husband, Henry Serna

Gomez ("Petitioners"), seeks review of the Board of Immigration Appeals's

("BIA") decision affirming the Immigration Judge's ("IJ") order denying asylum,

withholding of removal, and relief under the U.N. Convention Against Torture and

Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). We hold

that substantial evidence supports the IJ's finding that the petitioners failed to

establish eligibility for asylum or withholding of removal.[1] Accordingly, we deny

the petition.

## I. Background

Petitioners, both natives and citizens of Colombia, entered the United States

on December 21, 2002 on tourist visas, with authorization to remain until June 19,

2003. On April 1, 2003, Aguilera filed an application on behalf of herself and

Gomez for asylum, withholding of removal, and relief under CAT. In the

application, Aguilera stated that she was seeking asylum or withholding of removal

because of the persecution she suffered based on her political opinion and

membership in a particular social group. Aguilera cited her active involvement in

the New Generation political party, in which she organized meetings, campaigns,

and social events to attract new voters; designed and implemented literacy

---

[1] Petitioners failed to raise any arguments with regard to the denial of CAT relief and, thus, have abandoned that issue. Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

campaigns; and often spoke at public events, encouraging people to reject the influence of violent groups in Colombia.

Aguilera attached to her application an affidavit further supporting her claim for asylum or withholding of removal. Aguilera noted that she had worked as an elementary school teacher for over thirty years and practiced law as an independent attorney, representing juveniles and advocating for the rights of abused and mistreated children. According to Aguilera, on December 15, 2002, two members of the Revolutionary Armed Forces of Colombia ("FARC") approached her at a bus stop, identified her as a teacher and attorney, and threatened to kill her if she continued her political work in the community. Aguilera resigned her teaching position. Aguilera filed a formal complaint with the police on December 20, 2002. The police stated that they would conduct an investigation and refer her case to the prosecuting attorney, but the police did not provide her with any protection. Aguilera fled to the United States the next day out of fear that she would be killed by FARC if she remained in Colombia.

The Petitioners remained in the United States beyond the date authorized by

3

their visa, and the Immigration and Naturalization Service ("INS")[2] subsequently issued notices to appear for both, charging them with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Aguilera appeared at her initial hearing and conceded removability. Aguilera's testimony was largely consistent with the information she provided in her application and affidavit. In support of her application, Aguilera submitted: (1) a police report and written statement filed December 20, 2002, indicating that Aguilera was threatened by two members of the 44th Front of FARC; (2) a letter from John Sandoval, president of the community action board of El Cortijo neighborhood, confirming Aguilera's participation in community activities; (3) a letter from the Department of Education Secretary's Office, confirming Aguilera's employment as a teacher; (4) a flyer from a teacher's group, noting the violence teachers face and encouraging teachers to participate in a public demonstration to demand greater protection from the government; (5) a news article describing violence against teachers; (6) a copy of Aguilera's diploma, indicating completion for her degree in law and political science from the Free University of Colombia; (7) a letter dated December 17, 2002, from a leader in the

---

[2] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The Act created the Department of Homeland Security, abolished the INS, and transferred the INS's functions to the new department. Although this case was initiated after the transfer, the application and notices to appear refer to the INS. For consistency's sake, we refer to the INS.

New Generation party, stating that Aguilera was a member of the party; and (8) a letter dated October 7, 2002, from the president of a community action group in Cali, Colombia, confirming her involvement in community activities.

Additionally, the petitioners submitted copies of the 2003 U.S. Department of State Country Report on Human Rights Practices in Colombia ("Country Report") and a report ("INS Report") dated May 20, 2002, from the INS Resource Information Center. According to the Country Report, FARC was responsible for hundreds of unlawful killings in Colombia, including numerous politically motivated killings and kidnappings. Over 70% of all civilian deaths were attributable to guerilla organizations such as FARC. Furthermore, FARC regularly threatened, kidnapped, and murdered public school teachers. The INS report indicated that FARC had an established presence throughout the country, widespread capability to harm, significant intelligence capabilities, and demonstrated ability to track down individuals.

Although two of the letters Aguilera submitted in support of her application raised credibility concerns, the IJ concluded that "I do not believe it can support an adverse credibility finding." The IJ noted that "[t]he problem with the respondent's asylum claim really is not with her credibility, but it is with her not being able to meet her burden of proof and persuasion[]." The IJ found that Aguilera could not

5

establish that she suffered harm from a single, verbal threat from FARC, and as such, the threat did not rise to the level of persecution contemplated by the INA. The IJ further found that, although Aguilera expressed a credible, subjective fear of persecution, she failed to establish that a threat of persecution exists for her throughout Colombia. The IJ noted that Aguilera received a single threat to leave a certain area and that she did not relocate. The IJ added that other members of the New Generation party remained in Colombia without harm, and that this fact undercut Aguilera's claim of future political persecution.

The petitioners filed a notice of appeal with the BIA. The BIA adopted and affirmed the IJ's decision, "except insofar as the [IJ] found that the respondent could relocate to another area of Colombia." The BIA agreed, however, with the IJ's finding that Aguilera failed to demonstrate that she had a well-founded fear that she would be singled out for persecution and concluded that the evidence did not "indicate that her notoriety as a member [of the New Generation party] would outlast her 3-year absence from Colombia."

## II. Standard of Review

We "review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's

6

decision as well." Id. Here, because the BIA expressly adopted the IJ's decision, we review the IJ's and BIA's decisions, except we review only the BIA's decision regarding Aguilera's ability to relocate within Colombia. Id.

To the extent that the IJ's and BIA's decisions were based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). We review the IJ's factual determinations under the substantial evidence test, and we "must affirm the BIA's [and the IJ's] decision if it is supported by reasonable, substantial and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (quotation omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

### III. Discussion

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Secretary of the Department of Homeland Security or the Attorney General has the discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's
> nationality or, in the case of a person having no

7

> nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group [] or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving "refugee" status. Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. Id. at 1287; 8 C.F.R. § 208.13(a), (b). "Demonstrating such a connection requires the alien to present specific, detailed facts showing a reason to fear that he or she will be singled out for persecution on account of" a statutorily listed factor. Al Najjar, 257 F.3d at 1287.

We have held that "persecution" is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). Furthermore, we have noted that "[n]ot all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000).

8

If the alien meets her burden of showing she has suffered past persecution, a presumption arises that she also has a well-founded fear of future persecution. Al Najjar, 257 F.3d at 1285. The government rebuts that presumption, however, if it shows by a preponderance of the evidence that the country's conditions have changed such that the applicant's life or freedom would no longer be threatened or that the alien could relocate within the country and it would be reasonable to expect him to do so. 8 C.F.R. § 208.13(b), § 208.16(b).

An alien who has not shown past persecution may still be entitled to asylum if he can demonstrate a well-founded fear of future persecution. The alien must show that he has a fear of persecution in his home country and that "there is a reasonable possibility of suffering such persecution if he or she were to return to that country." 8 C.F.R. § 208.13(b)(2)(i). Further, "an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

After thorough review of the record, we conclude that substantial evidence supports the IJ's and BIA's decision that the petitioners were not entitled to asylum or withholding of removal under the INA. The single incident of verbal harassment that Aguilera suffered at the hands of FARC is insufficient to establish past

9

persecution.  Mere harassment, without more, is insufficient to establish

persecution.  Sepulveda, 401 F.3d at 1231.

Substantial evidence also supports the IJ's determination that Aguilera failed

to establish a well-founded fear of future persecution if she returned to Colombia.

Although the BIA determined that the IJ erred in finding that Aguilera could

reasonably relocate within Colombia, the record indicates that other leaders of the

New Generation party have remained in Colombia without incident.  Additionally,

Aguilera failed to present evidence that FARC maintained an interest in harming

her or that would she would be singled out for persecution by FARC if she returned

to Colombia.  Id. at 1232 (holding that the record did not compel reversal of the IJ's

determination that the applicant failed to establish a well-founded fear of future

persecution because "the evidence does not indicate her notoriety as an activist

would outlast her four-year absence from Colombia").  Consequently, we hold that

the record does not compel reversal of the IJ's finding that Aguilera does not have a

well-founded fear of future persecution.[3]

---

[3] We also reject Aguilera's argument that 8 C.F.R. § 1208.13(2)(iii)(A) & (B) eliminate her need to show that she will be singled out for persecution because of a statutorily listed factor. Those regulations state that an alien need not show that she will be singled out for persecution if she establishes a pattern or practice in her country of nationality "of persecution of a group or persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion" and her inclusion in such a group. 8 C.F.R. § 1208.13(2)(iii)(A) & (B). Aguilera contends that FARC has engaged in a pattern or practice of persecuting "individuals who participate in politics in Colombia" and that she is similarly situated to those individuals. Aguilera's argument casts a much wider net than allowed by the

Because Aguilera failed to meet her burden to establish her eligibility for asylum, we also conclude that Aguilera failed to meet the higher standard for withholding of removal.  Al Najjar, 257 F.3d at 1292-93.  Accordingly, we DENY the petition.

PETITION DENIED.

---

regulations, which list very specific groups that fall within the regulation.  Therefore, we conclude that Aguilera is required to show that she will be singled out for persecution.