[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-10045

_____

INS No. 28426457-A

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 16, 2001
THOMAS K. KAHN
CLERK

HAMID B. MOHAMMED,

Petitioner,

versus

JOHN ASHCROFT, U.S. Attorney General,
IMMIGRATION AND NATURALIZATION SERVICE,

Respondents.

_____

Petition for Review of an order
of the Board of Immigration Appeals

_____

**(August 16, 2001)**

Before ANDERSON, Chief Judge, MARCUS and KRAVITCH, Circuit Judges.

MARCUS, Circuit Judge:

Petitioner Hamid Mohammed seeks review of a decision by the Board of

Immigration Appeals ("BIA") of the Immigration and Naturalization Service

("INS") ordering him removed to his native Trinidad. The BIA found in pertinent part that Mohammed, as an "aggravated felon," was not eligible for any discretionary relief from deportation. Mohammed pled guilty in Florida state court in 1996 to two counts of dealing in stolen property. Under a subsequent amendment to the Immigration and Naturalization Act ("INA"), these offenses were classified as aggravated felonies; prior to that amendment, these offenses were not deemed aggravated felonies. Mohammed argues that the Due Process Clause forbids applying the amended definition of aggravated felony in order to deny him an opportunity to seek discretionary relief from removal, because he could have sought such relief at the time of his guilty plea. Having reviewed the record and carefully considered the parties' arguments, we find no Due Process violation, and therefore affirm.

## I.

This case arises out of removal (formerly called deportation) proceedings against Mohammed, a Trinidad native who arrived in the United States in 1982 and became a permanent resident alien in 1989. On July 9, 1996, Mohammed pled guilty before a Florida state court to two counts of dealing in stolen property. The two counts related to two separate incidents where Mohammed attempted to pawn stolen goods (two video camcorders and some tools). Both incidents occurred in or

about July 1995. Mohammed was sentenced to 18 months imprisonment on each of the two counts against him, with the sentences running concurrently.

On July 29, 1998, the INS began removal proceedings based on Mohammed's convictions. The INS alleged that Mohammed was removable under the terms of the INA for having committed two crimes involving moral turpitude and for having been convicted of an aggravated felony within the meaning of 8 U.S.C. § 1101(43), as amended.[1] On September 16, 1998, Mohammed -- still in prison for the stolen property offenses -- appeared pro se (having waived counsel) at the removal hearing before an Immigration Judge ("IJ"). Mohammed argued that removing him to Trinidad would cause great hardship; among other things, Mohammed pointed out that he had a wife and children in this country, no longer had any family in Trinidad, and had a job as a plumber waiting for him once he was released. It is unclear whether Mohammed actually sought relief under, or even identified, any particular provision of the INA. The IJ ultimately expressed some sympathy for Mohammed's plight. He concluded, however, that because Mohammed had been convicted for an aggravated felony (as defined in the

---

[1]Mohammed does not, and as best we can tell did not, dispute that he is removable under at least the "moral turpitude" provision.

3

amended INA), the Attorney General was not empowered to grant any relief. The IJ therefore ordered Mohammed removed to Trinidad.

Mohammed appealed that order to the BIA. In a submission dated on or about December 30, 1998, Mohammed reiterated his hardship arguments, and also stated an objection to applying the amended definition of aggravated felony to his case. On or about February 18, 1999, Mohammed submitted a second brief in which he repeated his prior arguments and asserted that he was entitled to a suspension of deportation. Mohammed also asserted that he had been denied Due Process, because he did not fit the statutory definition of aggravated felon either at the time of his misconduct or at the time he entered his guilty plea.

On March 16, 1999, the BIA denied Mohammed's appeal. The Board explained that "[n]otwithstanding the contentions presented on appeal, [Mohammed], as an aggravated felon, is ineligible for any form of relief that is within the power of the Immigration Judge or this Board to grant." The Board also observed that although Mohammed asserted that his plea bargain should not be used against him in these proceedings, "that matter is beyond our jurisdiction to review. The conviction records confirm that [he] has been convicted of an aggravated felony, regardless of the date of conviction."

The sequence of events after that becomes a bit more obscure. On April 1, 1999, Mohammed, still pro se, filed a Petition for Review with this Court. It appears, however, that on or about April 9, 1999, he also filed a motion to reopen or reconsider with the BIA. The BIA denied that motion in an order dated May 10, 1999. The BIA first construed the motion as one to reconsider rather than reopen, because no previously-unavailable evidence had been submitted with it. The Board then said that it saw no error in its earlier decision. The Board also addressed and rejected Mohammed's contention (apparently raised for the first time in the reconsideration motion) that he was entitled to a waiver of deportation under former INA § 212(c). The Board explained that § 212(c) had been repealed and was thus inapplicable to Mohammed, whose "relief, if any, is limited to cancellation of removal under section 240A of the Act." The Board also rejected Mohammed's argument that his convictions were not final for immigration purposes  because he had moved in state court to vacate his convictions. Mohammed did not separately Petition for Review of that order.

Meanwhile, this Court, acting upon Mohammed's April 1, 1999 Petition, issued a lengthy set of jurisdictional questions. In orders dated December 1, 1999, we (1) carried the jurisdictional questions with the case and directed the parties to address them in their briefs; (2) granted Mohammed's in forma pauperis request,

5

and (3) appointed counsel for Mohammed for purposes of this appeal. During oral argument, counsel for Mohammed indicated that the Florida courts have denied Mohammed's motion to vacate his convictions, finding that Mohammed was properly advised of the deportation consequences of his guilty plea. Also during oral argument, counsel indicated that Mohammed has now been removed to Trinidad.

## II.

Notwithstanding the wide variety of issues mentioned by Mohammed in the course of his pro se Petition for Review, he develops only a single issue in his counseled briefs: "Whether Mohammed was denied due process under the U.S. Constitution by the retroactive application of a revised definition of 'aggravated felony' under immigration law, which attached new legal consequences to his guilty plea by retroactively foreclosing his right to a waiver or cancellation." Pet. at 2. The thrust of Mohammed's argument is that the expanded definition of aggravated felony added to the INA by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, cannot -- consistent with Due Process -- be applied to make him ineligible to pursue discretionary relief

from removal. We review de novo this legal challenge to the BIA's decision. See, e.g., Le v. United States Attorney General, 196 F.3d 1352, 1353 (11th Cir. 1999).[2]

At the time Mohammed pled guilty in July 1996 to the two charges of receiving stolen property in violation of Florida law, the INA's definition of aggravated felony did not encompass that offense. Less than two months later on September 30, 1996, however, Congress in IIRIRA expanded the definition to include "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment is at least one year." IIRIRA § 321(a)(3), amending 8 U.S.C. § 1101(a)(43)(G). IIRIRA took effect on April 1, 1997. There is no dispute that the crime to which Mohammed pled guilty comes within the amended definition of aggravated felony, but does not come within the pre-IIRIRA definition. There is also no dispute that, under any version of the INA applicable

---

[2]In its briefs, the INS argued that we may lack jurisdiction to hear Mohammed's petition because Mohammed is appealing only the BIA's resolution of his "motion to reopen," and the denial of a motion to reopen may be a discretionary decision as to which judicial review is foreclosed by IIRIRA. This objection fails because, as the INS acknowledged during oral argument, Mohammed has sought review of the BIA's original April 9, 1999 decision affirming the IJ's ruling. That ruling, accordingly, is squarely before us. We note as well that the INS does not contend that there is a statutory constraint on our jurisdiction to address constitutional challenges. Cf. Richardson v. Reno, 180 F.3d 1311, 1316 n.5 (11th Cir. 1999) (jurisdiction-stripping provision in IIRIRA did not "foreclose constitutional challenges to the statute itself or other substantial constitutional issues from being raised in the court of appeals"), cert. denied, 529 U.S. 1036, 120 S. Ct. 5529 (2000).

to his case, Mohammed would not be eligible for discretionary relief from deportation if he had been convicted of an aggravated felony.[3]

Mohammed contends that applying the amended definition of aggravated felony to a conviction that pre-dates IIRIRA's effective date, thereby making him ineligible to seek discretionary relief from removal, violates his rights under the Due Process Clause of the Fifth Amendment. In making this argument, Mohammed relies extensively on the Supreme Court's opinion in Landgraf v. USI Film Products, 511 U.S. 244, 114 S. Ct. 1483 (1994). Technically speaking, however, Landgraf does not purport to lay down rules for deciding when retroactive application of a statute would violate Due Process. Rather, the

---

[3]Status as an "aggravated felon" renders an alien ineligible for discretionary relief -- called cancellation of removal -- under 8 U.S.C. § 1229b. This provision was the only relevant provision of the INA that would have authorized the Attorney General to provide discretionary relief at the time of Mohammed's removal proceeding. This provision was adopted in IIRIRA as a replacement for former INA §§ 212(c) and 244(a)(2) ("suspension of deportation"), which IIRIRA repealed. See IIRIRA § 304(b). In St. Cyr v. INS, No. 00-767 (U.S. June 25, 2001), the Supreme Court held that IIRIRA's repeal of former INA § 212(c) could not be applied retroactively to persons who pled guilty to offenses prior to IIRIRA's effective date and who "would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."

Mohammed does not argue in his briefs to this Court that the BIA's decision should be set aside because the Board improperly found him ineligible for relief under § 212(c). Rather, the only argument fairly developed in this Court concerns the validity under Due Process of IIRIRA's expanded definition of aggravated felony as it affects Mohammed's eligibility for discretionary relief under the current version of the INA. Any objection based on § 212(c) has been waived, and hence we do not consider whether the BIA erred in denying Mohammed relief under that provision. Cf. Flanigan's Enterprises, Inc. v. Fulton County, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (party waives issue not developed in its briefs)(citing Continental Tech. Servs., Inc., v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (same)).

Supreme Court in that case established principles to be used by courts in evaluating whether, as a matter of statutory analysis, an Act of Congress may be applied retroactively. Although the Court did discuss potential Due Process considerations as one reason to adhere to the general presumption against a statute's retroactivity in the absence of clear Congressional intent to the contrary, see id. at 266, 114 S. Ct. at 1497, the Court did not attempt to define precisely when retroactive application of a statute would violate Due Process. Cf. Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 716-17, 94 S. Ct. 2006, 2019 (1974) (suggesting that applying a law retroactively violates Due Process when it causes manifest injustice). Landgraf, therefore, does not fully address the constitutional objection raised by Mohammed. Nevertheless, in an abundance of caution, we will consider Mohammed's argument under both the statutory analysis set forth in Landgraf as well as under this Court's existing Due Process jurisprudence.

Turning first to the statutory retroactivity analysis, the Supreme Court recently reaffirmed that "[d]espite the dangers inherent in retroactive legislation, it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect." St. Cyr, -- U.S. at --. A federal statute may be applied retroactively if there is a clear indication from Congress that it intended such a result. See id. This standard is not easily met. "[C]ases where this Court

9

has found truly retroactive effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation." Id. (internal quotation marks and citation omitted).[4] But when Congress has provided a clear statement of its intent to apply a statute retroactively, we respect that intention. See, e.g., Tefel v. Reno, 180 F.3d 1286, 1302 (11th Cir. 1999) ("Landgraf provides that the 'first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules.'"), cert. denied, 530 U.S. 1228, 120 S. Ct. 2657 (2000); Mayers, 175 F.3d at 1300 (same). In attempting to ascertain Congressional intent, "a court should use the 'normal rules of construction' and examine the text, structure, and history of the legislation to determine whether Congress intended for there to be retrospective application." Mayers, 175 F.3d at 1302 (quoting Lindh v. Murphy, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063 (1997)).

With regard to IIRIRA § 321(a)(3), Congress made a clear and unambiguous statement in favor of retroactivity. In the same section of IIRIRA that expanded

---

[4]When the statute contains no such express command, a court must determine whether the new statute would have retroactive effect, "i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Mayers v. INS, 175 F.3d 1289, 1302 (11th Cir. 1999).

the type of theft offense constituting an aggravated felony, Congress also amended

the overall definition of aggravated felony to make clear that the new definition of

aggravated felony applied not only to future convictions, but also to convictions

entered prior to IIRIRA:

> EFFECTIVE DATE OF DEFINITION. -- Section 101(a)(43) (8
> U.S.C. 1101(a)(43)) is amended by adding at the end the following
> new sentence: "Notwithstanding any other provision of law (including
> any effective date), the term applies regardless of whether the
> conviction was entered before, on, or after the date of enactment of
> this paragraph."

Pub. L. 104-208, § 321(b); see also id. § 321(c) ("The amendments made by this

section shall apply to actions taken on or after the date of the enactment of this Act,

regardless of when the conviction occurred.").  That language is now formally

codified at 8 U.S.C. 1101(a)(43) as part of the new, broadened definition of

aggravated felony.  It provides that:  "Notwithstanding any other provision of law

(including any effective date), the term applies regardless of whether the

conviction was entered before, on, or after September 30, 1996."

It is hard to imagine a clearer statement of Congressional intent to apply the

expanded definition of aggravated felony to convictions -- such as Mohammed's --

pre-dating IIRIRA.  Indeed, in St. Cyr, the Supreme Court specifically cited §

321(b) as evidence of "Congress' willingness in [parts of] IIRIRA to indicate

unambiguously its intention to apply specific provisions retroactively."  -- U.S. at -

11

-.  As the Court explained: "IIRIRA's amendment of the definition of 'aggravated felony,' . . . clearly states that it applies with respect to 'conviction[s] . . . entered before, on, or after' the statute's enactment date."  Id. (quoting § 321(b)).  Accordingly, under the Landgraf statutory analysis, we do not ever reach the questions on which Mohammed predicates his retroactivity argument, such as his assertion that § 321(a)(3) would impair rights he possessed when he pled guilty and increase his liability for past conduct.  Congress clearly intended § 321(a)(3) to apply to convictions pre-dating IIRIRA, and under Landgraf our analysis goes no further.

Mohammed's Due Process objection fails for different reasons.  Mohammed presumes that he has a Due Process right to be eligible for discretionary relief from removal, or at least a right not to be deemed ineligible based on the expanded definition of aggravated felony created by IIRIRA § 321(a)(3).  The critical flaw in this argument is that, under our precedent, an alien does not have a constitutionally protected interest in receiving discretionary relief from removal or deportation.  In Tefel, for example, we rejected the argument advanced by several aliens that provisions of IIRIRA making them ineligible for the discretionary relief of suspension of deportation violated Due Process:

> No constitutionally protected interest arises from the INS' actions in granting or denying applications for suspension because the Attorney

12

General exercises "unfettered" discretion over applications for suspension. Therefore, regardless of the ultimate disposition of an application for suspension of deportation, Plaintiffs do not possess a constitutionally protected interest in their expectancy of receiving suspension. Thus, just as Plaintiffs enjoy no "liberty or property" interest in their expectancy of receiving suspension of deportation, they enjoy no "liberty or property" interest in being eligible to be considered for suspension. Accordingly, being ineligible for suspension does not deprive Plaintiffs of a constitutionally protected interest any more than having their applications for suspension denied.

180 F.3d at 1301-02. Likewise, in Mejia Rodriguez v. Reno, 178 F.3d 1139 (11th Cir. 1999), we rejected a Due Process challenge in connection with a BIA determination that an alien was ineligible for suspension of deportation because "an alien has not been deprived of 'fundamental fairness' simply by being ineligible for a purely discretionary 'act of grace' like suspension of deportation." Id. at 1148; see also Huicochea-Gomez v. INS, 237 F.3d 696, 700 (6th Cir. 2001) (no constitutionally protected liberty interest infringed by denial of cancellation of removal).[5]

Mohammed has no constitutionally-protected right to discretionary relief from removal, and therefore cannot -- at least in these circumstances -- claim a

---

[5]The cases cited by Mohammed primarily concern the retroactivity of § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214, 1277 ("AEDPA"), and turn on application of the second step of Landgraf, not Due Process. The retroactivity of AEDPA § 440 is not at issue in this case, in part because AEDPA took effect several months before Mohammed entered his guilty pleas in July 1996 and well before the INS commenced removal proceedings against him in 1998.

substantive Due Process violation based upon Congress's decision in IIRIRA to make a broader class of aliens ineligible for this relief.[6] In any event, Mohammed fails to show on this record that Congress's decision to apply its expanded definition of aggravated felony to convictions pre-dating IIRIRA was irrational. Cf. United States v. Plummer, 221 F.3d 1298, 1308-09 (11th Cir. 2000) ("Under our substantive due process jurisprudence, a statute or regulation will be upheld so long as it is rationally related to a lawful governmental purpose and is not unlawfully arbitrary or discriminatory."). Simply put, Mohammed cites no case finding a Due Process violation on any facts similar to those at issue here, and does not attempt to articulate or apply our substantive Due Process jurisprudence to his situation.

Finally, we note that Mohammed argues repeatedly that applying the amended aggravated felony definition to him is unfair because he did not know that ineligibility for relief from deportation would be a consequence of pleading guilty to the stolen property offenses, which were not "aggravated felonies" at the time of his guilty pleas. To the extent this argument turns on the retroactivity

---

[6]The Supreme Court's recent decision in St. Cyr does not help Mohammed. As noted above, Mohammed, unlike the petitioner in St. Cyr, does not squarely argue that the BIA's decision should be set aside on the ground that the BIA erred in failing to grant relief under § 212(c). More generally, Mohammed's argument in this case is expressly predicated on Due Process, an issue the St. Cyr majority did not address.

14

concerns discussed above, we reject it for the reasons stated above.  To the extent this argument is based on a claim that the Florida trial court which took his plea improperly failed to advise him of the deportation consequences of pleading guilty, the argument is unavailing.  If the Florida trial court erred -- something that is not established on this record -- then Mohammed's remedy is a collateral attack on the underlying convictions in Florida state court, not a judicial determination, in the context of a Petition for Review of an BIA decision, that he must as a matter of Due Process be eligible for relief from removal.  In any event, it appears that the Florida courts have now rejected Mohammed's attempt to set aside his guilty pleas.[7]

For all of the foregoing reasons, while we understand Mohammed's dilemma, we are constrained to deny his Petition for Review, and therefore affirm the BIA's removal order.

**PETITION DENIED.**

---

[7]We note as well that there is no evidence in this record that Mohammed relied upon, or even considered, the prospect of discretionary relief from deportation in deciding to plead guilty.

15