[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 16, 2005
THOMAS K. KAHN
CLERK

No. 05-10301
Non-Argument Calendar
_____

Agency No. A79-092-097

ALDEMAR JIMENEZ-ROJAS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 16, 2005)

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Aldemar Jimenez-Rojas, a Colombian national, petitions this Court for review of the Board of Immigration Appeals' decision denying his application for asylum, for withholding of removal under the Immigration and Nationality Act, and for withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT). Because we conclude that the BIA's decision comported with the applicable law and is supported by substantial evidence, we deny the petition.

## I.

On January 20, 1999, Jimenez-Rojas joined Fundaempaz, a group that helped the needy, individuals displaced by guerillas, and former guerillas who had deserted and needed help reintegrating into society. The local branch of Fundaempaz with which Jimenez-Rojas was affiliated had about five hundred volunteers. Each week, the group would choose towns that had suffered because of the guerillas and conduct educational workshops there. While working with the group, Fundaempaz members wore shirts that identified them as members of Fundaempaz. Though Jimenez-Rojas stated that attendees of the workshops often told him that guerillas were present in the town where the workshops were conducted, Jimenez-Rojas never personally encountered a guerilla.

2

Jimenez-Rojas said that he knew other Fundaempaz members who had received death threats from the guerillas. He also stated that the National Liberation Army (ELN), a guerilla organization, had sent lists to Fundaempaz of people who needed to be eliminated and that he had been on the lists. On January 7, 2001, Jimenez-Rojas received a threatening phone call from an unidentified caller who indicated that Jimenez-Rojas would be killed for being a snitch. Jimenez-Rojas did not report this phone call either to the authorities or to other members of Fundaempaz. He continued his activities with the group.

On January 12, 2001, Jimenez-Rojas received another threatening call from an unidentified individual who stated that "they" knew where he lived and that he would be killed for being a snitch and a son of a bitch. Again, Jimenez-Rojas did not report the call to anyone. Jimenez-Rojas stated that he assumed the phone calls were made by guerillas because the areas where Fundaempaz operated were infiltrated with guerillas and because he did not have any personal enemies.

On January 16, 2001, the United Self-Defense Forces of Columbia (AUC), a paramilitary group, slid a condolence note under Jimenez-Rojas' door. The note was addressed to him and announced his death. It was signed "AUC." Jimenez-Rojas explained that he was a target of both the ELN and the AUC. When he worked in areas controlled by the ELN, the AUC thought he was working with the

3

ELN, and, when he was working in areas controlled by the AUC, the ELN thought he was working with the AUC.

According to Jimenez-Rojas, the combination of the phone calls and the condolence note convinced him that he would be killed. He said he was aware that other Fundaempaz members were receiving threats and that two Fundaempaz members had been killed in shootings at the end of 2000. He admitted that he did not know who had killed the Fundaempaz members, but stated that they had received threats before they had been killed. On January 25, 2001, Jimenez-Rojas filed a complaint with law enforcement officials in the city in which he lived. He was advised to change his phone number. He continued to fear for his life, he stated, because "the guerilla really does not forget."

On January 29, 2001, Jimenez-Rojas entered the United States at the Miami International Airport without a valid, unexpired immigrant visa or passport. He was served with a notice to appear before an immigration judge on February 8, 2001. Jimenez-Rojas was charged with removability for fraudulently seeking to procure entry into the United States and for entering the country without a valid entry document. See 8 U.S.C. § 1182(a)(6)(C)(i), (a)(7)(A)(i)(I). On February 20, 2003, he applied for asylum, withholding of removal, and relief under CAT.

On November 3, 2003, the Immigration Judge held a hearing on Jimenez-Rojas' application. The IJ found that Jimenez-Rojas had established neither that he had suffered past persecution nor that he had an objectively reasonable, well-founded fear of future persecution. At the conclusion of the hearing, the IJ rendered an oral decision denying the application and ordering that Jimenez-Rojas be removed to Columbia.

Jimenez-Rojas timely appealed his removal order to the BIA. Before the BIA, he challenged the IJ's determination of his eligibility for asylum and for withholding of removal under the INA; he did not, however, challenge the IJ's determination that he was ineligible for relief under CAT. The BIA issued a per curiam decision adopting and affirming the IJ's decision. Jimenez-Rojas then petitioned for review by this Court.[1]

## II.

We will review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted). Insofar as the BIA adopts the IJ's reasoning, we will review the IJ's decision as well. Id. (citation omitted). To the extent that the IJ's

---

[1] Because "we lack jurisdiction to consider claims that have not been raised before the BIA," Sundar v. Immigration & Naturalization Serv., 328 F.3d 1320, 1323 (11th Cir. 2003), we do not consider Jimenez-Rojas' CAT claim.

decision was based on a legal determination, our review is <u>de novo</u>. <u>Mohammed v. Ashcroft</u>, 261 F.3d 1244, 1247–48 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial-evidence test, and we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Al Najjar</u>, 257 F.3d at 1283–84 (internal marks and citations omitted). Thus, factual determinations "may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi v. Ashcroft</u>, 386 F.3d 1022, 1026 (11th Cir. 2004).

## III.

Either the Secretary of Homeland Security or the Attorney General may grant asylum to an alien who meets the statutory definition of "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). An asylum applicant carries the burden of proving "refugee" status. 8 U.S.C. § 1158(b)(1)(B)(i).

An alien may qualify as a refugee either by showing that he has suffered past persecution on account of a statutorily protected factor, in this case political opinion, or by showing that he has a well-founded fear of future persecution on account of a statutorily protected factor. 8 C.F.R. § 208.13(b); see also Al Najjar, 257 F.3d at 1289. To establish a "well-founded fear of persecution," an alien "must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.

This Court has explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (internal marks and citations omitted). In fact, we have made clear that "menacing telephone calls and threats . . . do not rise to the level of past persecution." Id. "[V]erbal harassment or intimidation" is the type of "mere harassment" that "does not amount to persecution." Id. (internal marks and citations omitted). The threats Jimenez-Rojas received do not rise to the level of past persecution.

In addition, substantial evidence supports the IJ's determination that Jimenez-Rojas does not have an objectively reasonable, well-founded fear of future persecution on account of his political opinion. He was never harmed, nor was he ever personally confronted by anyone claiming to be a guerilla or paramilitary member. His left his wife and young daughter behind in Columbia without any apparent fear for their safety. Jimenez-Rojas testified that the guerillas repeatedly threatened his life, yet they never attempted to attack him during Fundaempaz's workshops despite his assertion that they were always around when the workshops were being held. Jimenez-Rojas claimed the guerillas wanted to kill him because he was a "snitch," however, he never explained why the guerillas would have perceived him as such. Moreover, Colombian law enforcement seemed unimpressed with Jimenez-Rojas' claims; they merely advised him to change his phone number.

Even if Jimenez-Rojas does have an objectively reasonable, well-founded fear of future persecution, he cannot establish that he fears persecution *on account of* his political opinion. See Immigration and Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992) (holding that, in order to qualify for asylum, an applicant must establish that he will be persecuted "*because of* [his] political opinion"). Jimenez-Rojas' activities in Colombia were

8

limited to participation in weekly workshops held in local communities by Fundaempaz, a nonpolitical organization.

Though Jimenez-Rojas contests the IJ's determination that Fundaempaz was nonpolitical, the group described itself as nonpolitical in documents offered into the record by Jimenez-Rojas himself. Furthermore, in his own testimony, Jimenez-Rojas describes Fundaempaz as an organization that provided practical aid to those in need. The fact that Fundaempaz provided aid to people who had been displaced by the guerillas and to former guerillas who needed help reintegrating into society, in addition to providing aid to other needy people, does not transform it into a political organization.

Fundaempaz may have been a thorn in the side of the guerillas because of the aid it gave to former guerillas and to those the guerillas had displaced. This may have caused the guerillas to target members of Fundaempaz, including Jimenez-Rojas, for harassment or even persecution. If this did occur, however, it does not mean that Jimenez-Rojas was persecuted on account of his political opinion. It indicates only that the guerillas persecuted Jimenez-Rojas because they believed that the aid he gave undermined their own political objectives. Persecution on account of the persecutor's political opinion is not a permissible basis for refugee status. Elias-Zacarias, 502 U.S. at 482, 112 S. Ct. at 816 ("The

ordinary meaning of the phrase 'persecution on account of . . . political opinion' in § 101(a)(42) is persecution on account of the *victim's* political opinion, not the persecutor's."). Accordingly, substantial evidence supports the IJ's determination that Jimenez-Rojas is not eligible for asylum.

## IV.

To qualify for withholding of removal, an alien must show that, if he returned to his country, it is more likely than not that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). An alien who is unable to establish eligibility for asylum will also be unable to establish a claim for withholding of removal because withholding of removal carries a higher evidentiary burden. Al Najjar, 257 F.3d at 1293. Thus, because Jimenez-Rojas' application for asylum fails, his application for withholding of removal fails too.

**PETITION DENIED.**