[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12133
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 13, 2006
THOMAS K. KAHN
CLERK

BIA Nos. A97-636-037 & A97-636-038

DIEGO ALEXANDER CAMPINO GIRALDO,
MAUREN DALILA CASTRO ALVAREZ,
MARIA JOSE CAMPINO CASTRO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 13, 2006)

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Colombian natives and citizens Diego Alexander Campino Giraldo ("Campino"), his wife, Mauren Dalila Castro Alvarez, and their seven-year old daughter, Maria Jose Campino Castro, seek review of the Board of Immigration Appeals' ("BIA") decision affirming, without opinion, the Immigration Judge's ("IJ") order finding them removable and denying their application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").[1] On appeal, Campino argues that the IJ erred in denying asylum and withholding of removal because he demonstrated past persecution and a well-founded fear of persecution based on his political opinion, imputed or otherwise.[2] For the reasons set forth more fully below, we deny the petition.

We review factual determinations using the substantial evidence test. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (citation and quotation marks omitted). We review the record evidence in the light most favorable to the agency's decision and

---

[1] Campino's wife and daughter are derivative beneficiaries of Campino's claims for relief. Accordingly, only Campino is mentioned in reference to these claims.

[2] Because the BIA summarily affirmed the IJ without an opinion, we review the IJ's decision. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). Campino does not argue that the IJ erred in denying relief under the CAT. Accordingly, he has abandoned the issue. Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1007 n.2 (11th Cir. 2005).

draw all reasonable inferences in favor of that decision. Id. To conclude that the IJ should be reversed, we "must find that the record not only supports that conclusion, but compels it." Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002) (citation and quotation marks omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005). To the extent the IJ's decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001).

The Attorney General or the Secretary of Homeland Security has discretion to grant asylum if an alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1)(A); INA § 208(b)(1)(A). A "refugee" is:

> any person who is outside any country of such person's nationality
> . . . and who is unable or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that country
> because of persecution or a well-founded fear of persecution on
> account of race, religion, nationality, membership in a particular
> social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A); INA § 101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). In order to carry this burden, the alien must establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded

3

fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005). The applicant must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a protected ground. Al Najjar, 257 F.3d at 1287 (citation and quotation marks omitted). The persecution must be on account of Campino's political opinion, whether actual or imputed, and not the beliefs or opinions of his persecutors. See I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) (holding that persecution on account of political opinion is "persecution on account of the victim's political opinion, not the persecutor's"); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (holding that the petitioner must establish past or future persecution because of his actual or imputed political opinion). "It is not enough to show that [he] was or will be persecuted or tortured due to [his] refusal to cooperate . . . ." Sanchez, 392 F.3d at 438. "'[A]n imputed political opinion, whether correctly or incorrectly attributed,' may constitute a ground for a 'well-founded fear' of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1289 (citations omitted). "An asylum applicant may prevail on a theory of 'imputed political opinion' if he shows that the '[p]ersecutor falsely attribute[d] an opinion to [him], and then persecute[d] [him] because of that mistaken belief about [his] views.'" Id. (citations and quotation marks omitted).

4

To establish eligibility for withholding of removal under the INA, the applicant must show that his life or freedom would be threatened based on a protected ground. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). "The burden of proof for withholding of removal, however, is 'more likely than not,' and, thus, is 'more stringent' than the standard for asylum relief." Id. (citation omitted). An applicant who fails to establish eligibility for asylum on the merits necessarily fails to establish eligibility for withholding of removal. Forgue, 401 F.3d at 1288 n.4.

Campino, who was a cashier at a bank, applied for asylum and withholding of removal, alleging that members of the Revolutionary Armed Forces of Colombia ("FARC") sought to obtain information about bank customers from him. Campino testified regarding a series of threats and other incidents directed at himself and his family by the FARC, beginning about four months after his wallet, which contained a card certifying that he worked at the bank, was stolen. Campino described the following events: On September 8, 2002, he received a threatening letter from the FARC, signed by a Commander Padilla, requesting confidential information about bank clients. The letter informed him that if he did not cooperate things would go "very badly" for himself and his family. On September 26, 2002, upon leaving the bank, Padilla confronted him, asked him if he had decided to cooperate, and threatened to hurt his daughter if he refused. On

5

October 25, 2002, as he was picking up his daughter from school, Padilla again approached him, asked about his daughter, and again told Campino that, for the good of his family, Campino had to "do the work," which he understood meant to give them the requested bank information. On November 5, 2002, he removed his daughter from school because people unconnected to his family were asking questions about his daughter. On December 27, 2002, he received a threatening phone call. Finally, on January 9, 2003, as he was driving home from the bank, Padilla began following him on a motorcycle and, as Padilla passed him, Padilla fired two shots into the hood of his car. He received another threatening phone call that night. Campino then took his family to his mother-in-law's house, where he stayed without incident until he left Colombia in April 2003.

Among other reasons, the IJ denied asylum on the ground that Campino failed to establish any nexus to any of the protected grounds because the FARC's only motivation was to obtain financial information about the bank's clients. The IJ further found that Campino did not submit adequate evidence from which he could find that the FARC's interest was on account of Campino's imputed political opinion. Because Campino did not establish asylum eligibility, the IJ found that he, therefore, did not meet the higher standard for withholding of removal. Campino contends that the denial of his claims was in error, arguing that his refusal to provide the FARC with access to bank records imputed to him an anti-

6

FARC political opinion, and that the FARC targeted him because of it.

The IJ's finding that Campino failed to establish persecution on account of a protected ground is supported by substantial evidence. Campino's testimony that the FARC initially approached him about the bank records and threatened him if he would not cooperate, as well as his belief that he was an enemy of the FARC because he did not do what they wanted, provide substantial evidence in support of the IJ's finding that the FARC's only motivation was to obtain financial information about the bank's clients. Persecution due to Campino's refusal to cooperate with the FARC is not persecution on account of a protected ground. See Ruiz, 440 F.3d at 1258 ("[E]vidence that . . . is consistent with . . . the petitioner's failure to cooperate with guerillas . . . does not constitute evidence of persecution based on a statutorily protected ground"); Sanchez, 392 F.3d at 438.

Nor does the record compel the conclusion that the FARC believed that Campino's refusal to cooperate was politically based as no mention was made of Campino being perceived as anti-FARC, and the only reason Campino gave for his belief that he was an enemy of the FARC was his refusal to cooperate. Accordingly, the IJ's denial of asylum is supported by substantial evidence. As a result, Campino also failed to establish eligibility for withholding of removal. Forgue, 401 F.3d at 1288 n.4. In light of the foregoing, the petition for review is

**DENIED.**

7