[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10043
Non-Argument Calendar

_____

BIA No. A95-225-516

BLANCA CECILIA MARTINEZ QUINTERO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 7, 2007)**

Before BIRCH, DUBINA, and CARNES, Circuit Judges.

PER CURIAM:

Petitioner Blanca Cecilia Martinez-Quintero[1] seeks review of the final

decision of the Board of Immigration Appeals ("BIA"), which affirmed, without

opinion, the Immigration Judge ("IJ")'s order denying her application for asylum

and withholding of removal under the Immigration and Nationality Act ("INA"),

and relief under the United Nations Convention Against Torture and Other Cruel,

Inhuman, or Degrading Treatment or Punishment ("CAT"). On appeal, Martinez-

Quintero contends that the BIA erred in concluding that she failed to demonstrate

her eligibility for asylum under section 208 of the INA, 8 U.S.C. § 1158.[2] Because

substantial evidence supports the BIA's decision, we DENY Martinez-Quintero's

petition.

## I. BACKGROUND

Martinez-Quintero, a native and citizen of Colombia, was admitted to the

United States on 23 October 2000, as a non-immigrant B-2 visitor with

authorization to remain in the United States until 22 April 2001. Following

expiration of her visa, in May of 2001 Martinez-Quintero filed an application with

---

[1] The petitioner is referred to in the BIA's final decision, and in the caption of this appeal, as "Martinez Quintero," without a hyphen. However, a hyphen is included in other documents, including in her petition for review. Accordingly, throughout this opinion we refer to the petitioner as "Martinez-Quintero."

[2] Martinez-Quintero's petition is limited to the issue of whether she was entitled to asylum under the INA. That is, her petition does not raise a challenge to the denial of withholding of removal or protection under CAT. Therefore, we do not address those claims. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam) (stating that "when an appellant fails to offer an argument on an issue, that issue is abandoned").

the former INS, seeking asylum and withholding of removal under the INA and relief under CAT.

Martinez-Quintero's application indicated that she was seeking asylum because she had suffered persecution by the Revolutionary Armed Forces of Colombia ("FARC") on account of her political opinion. Her application stated:

> I am seeking asylum in the United States due to the fact that I fear I may be killed. My common law husband,[3] whom I've lived with since 1996, has been threaten[ed] along with his whole family. His sisters were brutally murdered by the F.A.R.C. guerillas. Due to the fact that he was actively involved with the police in the investigation of his sister's murder, his life was in constant danger as well as min[e] since I was known in our community as his wife, he was constantly being threaten[ed] and we received many threatening calls at our residence in which the callers would identify themselves as members of the F.A.R.C. guerillas. We are terrified for our lives, the guerillas usually take ou[t] their vengeance on those that are close to their target and kill them. My life is in just as much danger as my husband due to all the threats and the persecution.

AR at 144.

In March 2002 the former INS served Martinez-Quintero with a Notice to Appear, charging that she was removable pursuant to section 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States for a longer time than permitted. The IJ held a hearing on both Martinez-Quintero's and Clavijo's

---

[3] Martinez-Quintero's common-law husband, Santiago Bello Clavijo ("Clavijo"), applied for relief separately from Martinez-Quintero. The IJ initially consolidated the two cases, but the cases were later separated at the asylum hearing. Consequently, the IJ rendered a separate decision for each asylum applicant. See Santiago Bello Clavijo v. U.S. Att'y Gen., No. 07-10042 (11th Cir. Aug. 13, 2007) (per curiam) (unpublished) (addressing Clavijo's petition separately).

applications on 14 July 2005. At the hearing, Martinez-Quintero conceded removability.

Martinez-Quintero's testimony at the hearing was consistent with her asylum application, and the IJ found her testimony to be credible. She stated that, prior to coming to the United States, she had lived in Colombia with her "companion," Clavijo. AR at 90. She testified that she and Clavijo had both belonged to the Liberal Party in Colombia, although she had not been an "active" member in the Party. Id. at 93.

Martinez-Quintero testified that Clavijo's three sisters had been killed in 1998 because they had received a large monetary inheritance and had refused to pay money to FARC guerillas operating in the area. She explained that such extortionary practices are frequently employed by FARC operatives, stating that "the people who have some wealth, who have some money, the [FARC] guerillas look for them because, well, the guerillas live from that." Id. at 95.

Martinez-Quintero testified that, after the murder of Clavijo's sisters, Clavijo had "work[ed] to find out who th[e]se people were" who committed the killings, and, because he had assisted with the government's investigation, FARC operatives had "[begun] to threaten him and . . . call him at home." Id. She also stated that FARC operatives had "[begun] to persecute [her] because [she] was his wife." Id. at 94. In addition to threats to Clavijo and herself, Martinez-Quintero

4

testified that her daughter had been threatened. She testified that she was fearful of returning to Colombia, because some of the individuals who had been suspected of committing the murders remained free in Colombia, and, therefore, Clavijo and his family remained in danger.

In response, the government argued that Martinez-Quintero's case had no "nexus" to any of the five statutorily enumerated grounds for establishing eligibility for asylum. Specifically, the government contended that "even though it's very sad [that] the three sisters . . . were assassinated," and even though the threats from FARC were "directly linked to her common-law husband's attempt to investigate who or why the sisters were killed," id. at 100-101, Martinez-Quintero had not shown that the persecution she and Clavijo had suffered in Colombia was "on account of race, religion, nationality, membership in a particular social group, or political opinion." See INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

The IJ rendered an oral decision, denying Martinez-Quintero's application for asylum, withholding of removal, and CAT relief. The IJ found Martinez-Quintero's testimony to be credible, but found that her claimed persecution at the hands of FARC had not been on account of a statutorily protected ground. Put simply, the IJ stated that there was "no evidence that the FARC guerilla members were interested in the respondent or the common-law husband because of his political opinion or membership in a particular social group, or any of the other

5

grounds." AR at 60. Rather, the IJ found that the threats at the hands of FARC had occurred because Clavijo had attempted to find out who killed his sisters. While the IJ indicated that Martinez-Quintero's case was unfortunate, the IJ stated that she had "failed to establish a basis for asylum in the sense that there was no nexus between anything that happened to the common-law husband's sisters or family [and] any of the protected grounds, and also the threats that she received were not linked to any protected ground." Id. at 60-61.[4]

Martinez-Quintero appealed the IJ's decision to the BIA in September 2005. In her appeal, she argued that the IJ had erred in denying her application for asylum, because the evidence showed that she had established persecution, both on account of her political opinion and her membership in a social group. As to the former, Martinez-Quintero defined her political opinion as being a general disagreement with the FARC guerillas. As to the latter, she argued that she had established that she was a member of a particular social group --- which she defined as being those groups of the population who opposed the FARC and refused to collaborate with them --- and, accordingly, that the IJ had erred in

[4] The IJ also concluded that, since Martinez-Quintero had failed to satisfy the lower threshold for establishing eligibility for asylum, she had not satisfied the higher evidentiary threshold for withholding of removal under the INA. Nor, according to the IJ, had Martinez-Quintero demonstrated that it was "more likely than not that [] she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Accordingly, the IJ concluded that she had failed to establish her eligibility for protection under CAT. As noted previously, neither of these conclusions is before us on appeal, and, therefore, we do not address them.

finding that there was no nexus between her persecution and a statutorily protected ground.

The BIA affirmed the IJ's decision, without further opinion. This petition for review followed.

## II. DISCUSSION

A. <u>Standard of Review</u>

"The appropriate standard of review is well-settled." <u>Mazariegos v. Office of U.S. Att'y Gen.</u>, 241 F.3d 1320, 1323 (11th Cir. 2001). We review legal issues <u>de novo</u>, <u>Mohammed v. Ashcroft</u>, 261 F.3d 1244, 1247 (11th Cir. 2001) (citation omitted), and "administrative fact findings under the highly deferential substantial evidence test," <u>Adefemi v. Ashcroft</u>, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (<u>en banc</u>) (citations omitted), <u>cert. denied</u>, 544 U.S. 1035, 125 S. Ct. 2245 (2005). Under that standard, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation and internal quotations omitted). "To reverse a factual finding by the BIA, this Court must find not only that the evidence supports a contrary conclusion, but that it compels one." <u>Farquharson v. U.S. Att'y Gen.</u>, 246 F.3d 1317, 1320 (11th Cir. 2001) (citation omitted). Indeed, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative

7

findings." Adefemi, 386 F.3d at 1027 (citation omitted). Instead, we will reverse a BIA's denial of asylum "only if the evidence presented by the applicant is so powerful that a reasonable fact finder would have to conclude" otherwise. Mazariegos, 241 F.3d at 1323-24 (citations omitted).

In reviewing the record on appeal, "[w]e review only the [BIA's] decision, except to the extent that it expressly adopts the IJ's opinion." Al Najjar, 257 F.3d at 1284 (citation omitted). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. (citation omitted). In Martinez-Quintero's case, the BIA expressly adopted the reasoning of the IJ's decision, without further comment. Therefore, we review the IJ's decision as if it were the BIA's. See id.

B. Martinez-Quintero's Eligibility For Asylum

Section 208 of the INA provides that "[a]ny alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum." INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General, in his discretion, may grant asylum to an alien if he "determines that such alien is a refugee within the meaning of section 101(a)(42)(A) [of the INA]." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined in section 101 as one

> who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

8

membership in a particular social group, or political opinion . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The asylum applicant bears the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a).  To prove refugee status, "the alien must establish a 'well-founded fear' that his or her [statutorily listed ground] will cause harm or suffering that rises to the level of 'persecution.'"  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004) (citation and quotation omitted).  Such a well-founded fear of persecution may be established by showing either:  (1) past persecution; or (2) a 'well-founded fear' of future persecution.  Sepulveda, 402 F.3d at 1230-31 (citing 8 C.F.R. § 208.13(a),(b)).

Although the INA does not define "persecution," we have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation."  Id. at 1231 (quotation marks, citation, and alteration omitted).  "Not all exceptional treatment is persecution."  Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000).  For example, we have made clear that threatening phone calls constitute mere harassment and intimidation, and that they fail to rise to the level of persecution.  Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006); see also Sepulveda, 401 F.3d at 1231 (stating that

9

"menacing telephone calls and threats . . . do not rise to the level of past persecution that would compel reversal of the IJ's decision") (citation omitted).

In this case, following the police investigation of the murder of Clavijo's sisters, Martinez-Quintero and Clavijo received "many threatening calls at [their] residence" from people identifying themselves as FARC operatives.  AR at 144; see also id. at 95 (stating that FARC operatives "began to call [] at home").  Martinez-Quintero's application and testimony do not mention any physical encounters with FARC guerillas; rather, her asylum application is limited to the threatening phone calls that she received prior to fleeing Colombia.  Such evidence, standing alone, is insufficient to rise to the level of "persecution" as our case law has construed that term.  See Sepulveda, 401 F.3d at 1231; see also Bello Clavijo v. U.S. Att'y Gen., No. 07-10042 (11th Cir. Aug. 13, 2007) (per curiam) (unpublished) (finding that the threatening phone calls complained of by Martinez-Quintero's companion, Clavijo, failed to rise to the level of past persecution under our case law).  Because Martinez-Quintero failed to demonstrate that she suffered "persecution" under the INA, INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A), we discern no error in the decision to deny Martinez-Quintero's petition for asylum.

Moreover, substantial evidence supports the decision to deny Martinez-Quintero's petition because she failed to establish a nexus between her claimed persecution and a statutorily protected ground.  As the IJ noted, in order to be

10

eligible for asylum, the asylum applicant must --- in addition to demonstrating persecution --- establish that such persecution is "on account of" one of the enumerated statutory grounds. 8 U.S.C. § 1101(a)(42)(A); see also 8 U.S.C. § 1158(B)(i) ("To establish that the applicant is a refugee . . . the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant"); Mazariegos, 241 F.3d at 1323 (stating that the asylum applicant must provide evidence that "he was mistreated because of his political opinion, or one of the other grounds, rather than for some other reason.") (internal quotations omitted).

Here, the IJ concluded that Martinez-Quintero had not established a nexus between her claimed persecution (past or future) and any of the five grounds necessary to establish asylum eligibility. Specifically, the IJ found "no evidence that the FARC guerilla members were interested in the respondent . . . because of [her common-law husband's] political opinion or membership in a particular social group or any of the other grounds specified for a grant of asylum." AR at 60. On appeal, Martinez-Quintero argues that this conclusion was in error. She contends that the record compels the opposite conclusion --- namely, that she suffered persecution on account of both her political opinion and her membership in a social group. We address each of these contentions in turn.

11

1.  Political Opinion

Persecution on account of political opinion requires that the claimed persecution be based upon the political opinion of the victim, not that of the persecutor. See Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437-38 (11th Cir. 2004) (per curiam) (citation omitted). The applicant must establish that his political opinion "will cause harm or suffering that rises to the level of 'persecution.'" D-Muhumed, 388 F.3d at 818 (citation omitted). In contrast, "[e]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam) (citation omitted); see also Sanchez, 392 F.3d at 438 (upholding denial of asylum because there was no "nexus between [the petitioner]'s political opinion and the FARC's alleged persecution," but, rather, "the evidence was consistent with a finding that the FARC harassed [the petitioner] due to her refusal to cooperate with them").

Here, the evidence suggests that the FARC threats against Martinez-Quintero and Clavijo were motivated by a desire to thwart the police investigation into the murders of Clavijo's sisters, rather any actual or imputed political opinion. The record demonstrates that FARC's threats against Martinez-Quintero were

12

"consistent with acts of private violence" or "the petitioner's failure to cooperate with the guerillas," rather than being based on a political opinion that Martinez-Quintero held or that may have been imputed to her. See id. In similar cases, where there was no evidence of a political motive and the record revealed only private, extortion-type threats by FARC guerillas, we have declined to find a nexus between the claimed persecution and a statutorily protected ground. For example, in Rivera v. United States Attorney General, an asylum petitioners' family members were murdered because they refused to pay a "war tax" to the FARC. 487 F.3d 815, 818 (11th Cir. 2007). After the murders, the petitioners received threats and demands that the war tax be paid. Id. at 819. We concluded that substantial evidence supported the IJ's finding that the FARC's motive for persecuting the petitioners' family was to raise funds for its guerilla war against the Colombian government, rather than the petitioners' actual or imputed political opinion. Id. at 822-823.

In Martinez-Quintero's case, we conclude that substantial evidence supports the IJ's determination that she failed to establish a nexus between her claimed persecution and an actual or imputed political opinion. As the IJ observed, the evidence makes clear that the FARC threatened her because her common-law husband was participating in the investigation of his sisters' murders and refused to cooperate with them by withdrawing from the investigation, not because of any

13

political opinion that she held or that was imputed to her. In fact, Martinez-Quintero acknowledged that she and her common-law husband were not active in the Liberal Party; and she presented no evidence that the threatening telephone calls ever mentioned her political opinion or targeted her because of her political opinion. See, e.g., id. at 822 ("The FARC never demanded that [the petitioner] cease any political activities, never accused [the petitioner] of being a government operative, and never demanded that his family cease involvement in the Liberal Party."); Sanchez, 392 F.3d at 438 (upholding denial of asylum because there was "no evidence establishing [the petitioner]'s actual or imputed political opinion, much less any nexus between [the petitioner]'s political opinion and the FARC's alleged persecution"). Here, the evidence does not compel the conclusion that Martinez-Quintero suffered past persecution, or has a well-founded fear of future persecution, on account of an actual or imputed political opinion.

2. Membership in a Social Group

Alternatively, Martinez-Quintero argues that she is a member of a "special" group, namely, those who have cooperated with the Colombian government's investigations against the FARC and who "oppose" the FARC. AR at 18. Consequently, she claims that her case satisfies the threshold for persecution based upon "membership in a social group." See INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (stating that asylum may be granted if the alien can demonstrate

14

"persecution or a well-founded fear of persecution on account of . . . membership in a particular social group").

We have stated that INA's "particular social group" category "should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1198 (11th Cir. 2006). Rather, we have adhered to the BIA's interpretation that the "particular social group" category "refers to persons who share a common, immutable characteristic," such as "sex, color, or kinship ties, or in some circumstances a shared past experience such as former military leadership or land ownership." Id. at 1193 (citations, alterations, and internal quotations omitted). In assessing whether an asylum petitioner belongs to a particular social group, the BIA has focused on two things: (1) immutability; and (2) social visibility. See id. at 1194 (citation omitted).

In this case, Martinez-Quintero seeks to construe her social group as being those who "the guerillas [have] targeted within the society" for opposing them, including "local officials, civic leaders, business owners, cattlemen, farmers, and teachers." AR at 18. Elsewhere, Martinez-Quintero broadly describes her putative social group as being "anyone engaged in any kind of activity, especially in collaboration with the government." Br. of Pet'r at 16. Were we to accept Martinez-Quintero's broad formulation of her social group as encompassing all of the people who "the guerillas [have] targeted within the society," AR at 18, the

result would be to create a "catch-all" category "for all persons alleging persecution who do not fit elsewhere."[5]  See Castillo-Arias, 446 F.3d at 1198.  This we decline to do.  Accordingly, the evidence does not compel the conclusion that she suffered persecution, or has a well-founded fear of persecution, "on account of" her "membership in a particular social group," as that term has been construed by the BIA and in our case law.  See INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

## III.  CONCLUSION

In summary, Martinez-Quintero has petitioned this court for review of the BIA's decision on her asylum application, which adopted, in full, the reasoning of the IJ.  Upon review, we find that substantial evidence supports the determination that Martinez-Quintero failed to demonstrate past persecution or a well-founded fear of future persecution "*on account of*" a statutorily protected ground.  INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (emphasis added).  Because the BIA's decision is supported by substantial evidence, we affirm the BIA's decision denying Martinez-Quintero's application for asylum.  **PETITION DISMISSED.**

---

[5] Moreover, we cannot find that Martinez-Quintero's purported social group shares common, immutable characteristics, other than the shared risk that they will be persecuted in the future by FARC. See AR at 18 (describing the social group as "local officials, civic leaders, business owners, cattlemen, farmers, and teachers," as well as other groups that oppose FARC).  We have made clear that "[t]he risk of persecution alone does not create a particular social group within the meaning of the INA, as virtually the entire population of Colombia is a potential subject of persecution." See Castillo-Arias, 446 F.3d at 1198 (citation omitted).

16