[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 7, 2007
THOMAS K. KAHN
CLERK

No. 06-13406
Non-Argument Calendar

_____

BIA Nos. A95-897-315 & A95-897-316

JORGE ARBEY ARROYO,
ANA MILEDY DOMINGUEZ,
SHARON JULIETH ARROYO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 7, 2007)**

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Jorge Arbey Arroyo ("Arroyo"), on behalf of himself, his wife, and their

daughter, petitions this court for review of the Board of Immigration Appeals's affirmance of the Immigration Judge's order of removal and denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). After a thorough review of the record, we conclude that we lack jurisdiction over the CAT claims because the petitioners failed to exhaust administrative remedies by not appealing this adverse determination to the BIA. Accordingly, we dismiss the petition as to that claim. We further conclude that the IJ properly denied asylum and withholding of removal because the petitioners could not show that they suffered past persecution on account of their imputed political opinion. Accordingly, we deny the petition on these grounds.

## I. Background

In 2000, Arroyo, his wife Ana Dominguez, and their daughter Sharon were admitted to the United States as non-immigrant visitors. They remained beyond the expiration periods and the INS issued notices to appear charging them with removability. Arroyo, as lead respondent, filed an application for asylum and withholding of removal, alleging that he was persecuted by Revolutionary Armed Forces of Colombia ("FARC") based upon political opinion and membership in a particular social group. In his application, Arroyo reported that he successfully had fought guerillas while serving in the military in Colombia, that FARC

2

supporters in his town of El Tambo threatened him until he moved to a different city, and that FARC members beat and threatened him. The petitioners supported their asylum application with documentary evidence, including news articles describing attacks that FARC made on El Tambo between 1990 to 1998 and letters confirming Arroyo's military service. They also submitted a letter from Arroyo's brother, Fredy Arroyo ("Fredy"), which reported that FARC forced Arroyo to leave the country and had since been threatening Fredy.

At the removal hearing, Arroyo testified as follows: Arroyo had not been a member or supporter of any political party. Prior to 1990, FARC members unsuccessfully attempted to recruit Arroyo. Instead, Arroyo joined the military and in 1990 he was a soldier in a military battle against FARC. As a result, FARC considered him its enemy and Arroyo was forced to move from El Tambo to Cali. After the move, he did not experience any threats or problems until July 2000, when FARC members stopped and searched a bus on which Arroyo and his family were traveling. FARC members identified Arroyo as having served in the military, beat him, said obscene things to him, and told him that he had one month to disappear or they would make him disappear. Arroyo believed that he had been able to live without incident for 10 years because FARC did not know where he was. After this incident in 2000, however, FARC called him twice at his business and once at his home. Each call questioned why he had not left and warned him

3

that he "knew what could happen." Arroyo did not report the incidents to the police because FARC would have learned about the report.

Arroyo further testified that the situation in El Tambo was very bad because the guerillas were everywhere and people who did not join the guerillas could not live there. However, between 1990 and 2000, he was able to visit his mother a few times in El Tambo by visiting only at night. Arroyo also testified that his brothers, Fredy and Haro had to leave El Tambo because of the guerillas. According to Arroyo, he could not relocate to another part of Colombia because the guerillas were everywhere. As recently as 2004, FARC had been looking for Arroyo.

The IJ denied the petitioners' application for asylum, withholding of removal, and CAT relief. Although the IJ stated that she believed Arroyo's testimony, she concluded that the events did not establish past persecution. The IJ also stated that Arroyo was not a member of a protected class and was not persecuted because of his political opinion, but rather his refusal to assist FARC. The IJ stated that, although the petitioners' fears appeared to be well-founded due to the "generally harsh conditions" in Colombia, this fear was not sufficient to be entitled to protection under the INA. Additionally, the IJ determined that, because the petitioners did not satisfy their burden of proof for asylum, they could not meet the higher standard of eligibility for withholding of removal. Finally, the IJ determined that the petitioners were not eligible for relief under the CAT.

4

The petitioners appealed to the BIA, arguing that they were members of a protected group and had been persecuted based on an imputed political opinion. The petitioners did not challenge the IJ's denial of CAT relief. The BIA summarily affirmed the IJ's opinion. Arroyo now petitions this court for review.

## II. Petition for Review

Where, as here, the BIA issues a summary affirmance of the IJ's opinion, we review the IJ's opinion. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003). To the extent that the IJ's decision was based on a legal determination, it is reviewed de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). Factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (internal quotations omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza, 327 F.3d at 1287. "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

### A. Asylum and Withholding of Removal

The petitioners argue that they established persecution based on an imputed

5

political opinion and Arroyo's membership in a particular social group, "namely rural peasants who have been recognized in their small communities for valor in battles against FARC guerillas." They argue that FARC singled out Arroyo because of his rejection of FARC, thereby establishing a direct nexus between Arroyo's imputed political opinion and his persecution. They further argue that they have established a well-founded fear of future persecution because FARC will punish Arroyo for his defiance. They assert that they cannot safely relocate to another part of Colombia.

The Secretary of Homeland Security or the Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the

6

alien to present specific, detailed facts showing a good reason to fear that he or she will be <u>singled out</u> for persecution on account of" a statutory factor. <u>Al Najjar</u>, 257 F.3d at 1287 (internal quotations omitted) (emphasis in original). An asylum applicant may not show merely that he has a political opinion, but must show that he was persecuted because of that opinion. <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 483, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992). Additionally, this court has stated that persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." <u>Sepulveda v. U.S. Att'y Gen.</u>, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotations and alterations omitted).

An alien who has not shown past persecution still may be entitled to asylum if he can demonstrate a future threat to his life or freedom on a protected ground in his country. 8 C.F.R. § 208.13(b)(2). To establish a "well-founded fear," an applicant must show that he has a fear of persecution in his home country and that "there is a reasonable possibility of suffering such persecution if he or she were to return to that country." 8 C.F.R. § 208.13(b)(2)(i).

To qualify for withholding of removal under the INA, an alien must show that, if returned to his country, the alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Generally, where an

7

alien fails to meet the "well-founded fear" standard for establishing asylum eligibility, the alien cannot meet the higher burden for withholding of removal. 8 C.F.R. § 208.16(b)(1), (2); Al Najjar, 257 F.3d at 1292-93.

"An imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1289 (internal quotations omitted). In order to qualify for relief from removal based on a political opinion, the petitioner "must establish that the guerillas persecuted her or will seek to persecute her in the future because of her actual or imputed political opinion." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (citations omitted) (emphasis in original). "It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas." Id. (citations omitted).

Here, the IJ correctly determined that the petitioners were not persecuted because of an imputed political opinion. Arroyo's refusal to join the FARC, by itself, does not constitute a political opinion and "is not enough to show that [the petitioners were] or will be persecuted or tortured due to [their] refusal to cooperate with the guerillas." See Sanchez, 392 F.3d at 438. Therefore, the petitioners have failed to establish that they were persecuted or singled out because of an imputed political opinion. See Al Najjar, 257 F.3d at 1287.

Furthermore, Arroyo's argument that he belonged to a particular social

group also fails. Although the IJ did not address Arroyo's argument that "rural peasants who have been recognized in their small communities for valor in battles against FARC guerillas" constitutes a particular social group, even assuming that it does, Arroyo failed to establish that he was persecuted because of this characteristic. There was nothing in the record to compel a finding that FARC took interest in Arroyo for any reason other than the fact that he refused to cooperate with guerillas. Silva, 448 F.3d at 1239. Arroyo himself stated that he thought that he was beaten because his former military service was viewed as an anti-FARC stance, which, as discussed above, is not sufficient to establish a protected ground. See Al Najjar, 257 F.3d at 1287; Sanchez, 392 F.3d at 438.

Therefore, substantial evidence supports the IJ's conclusion that the petitioners failed to establish that they have been persecuted or that there is a reasonable possibility that they will be persecuted because of their membership in a particular social group. Al Najjar, 257 F.3d at 1284, 1287 (internal quotations and citations omitted). Moreover, because the petitioners have not shown that they are entitled to asylum, they cannot meet the higher burden for eligibility for withholding of removal. Al Najjar, 257 F.3d at 1287, 1292-93.

B. CAT relief

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right, . . ." INA

9

§ 242(d)(1), 8 U.S.C. § 1252(d)(1). This requirement is jurisdictional and bars review of claims not raised before the BIA. Sundar v. I.N.S., 328 F.3d 1320, 1323 (11th Cir. 2003). The exhaustion requirement gives the BIA the opportunity to discover and correct its own error and ensures that the BIA has a full opportunity to consider the petitioner's claims. Id. at 1325; Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (internal quotations and citation omitted).

Here, the petitioners failed to challenge the IJ's denial of relief under the CAT before the BIA. Accordingly, we lack jurisdiction to review their request for withholding of removal under the CAT. 8 U.S.C. § 1252(d)(1); Sundar, 328 F.3d at 1323.

### III. Conclusion

For the foregoing reasons, we **DISMISS** the petition in part and **DENY** the petition in part.