[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 17, 2007
THOMAS K. KAHN
CLERK

No. 07-11622
Non-Argument Calendar

_____

BIA No. A95-908-393

HENRY ALBERTO ALVARADO MONTOYA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 17, 2007)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Henry Alberto Alvarado Montoya ("Alvarado"), petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") order denying his application for asylum, withholding of removal and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). After review, we dismiss in part and deny in part Alvarado's petition.

## I. BACKGROUND

Alvarado, a native and citizen of Colombia, arrived in the United States on February 11, 1999. On July 5, 2002, Alvarado filed an application for asylum, withholding of removal and CAT relief. In his application, Alvarado claimed that he was persecuted by the Colombian Revolutionary Armed Forces ("FARC") in Colombia on account of his religion. On February 10, 2005, the Immigration and Naturalization Service ("INS") issued a notice to appear, charging Alvarado with removability under the Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted. At his initial hearing, Alvarado admitted the charges and conceded removability.

According to Alvarado's application and hearing testimony, Alvarado worked as a missionary with the Cumberland Presbyterian Church ("CPC"), a church that operates in both Colombia and the United States. Six times a year Alvarado would go on a mission to work with Colombia's Indians in remote areas

2

of the country. During one of these trips in September 1998, Alvarado was speaking to a group of young people when he was approached by the FARC. The FARC guerillas verbally harassed him and accused him of being a spy for the "gringos" and using the CPC as his front. One of the guerillas hit Alvarado in the head with his gun, leaving Alvarado unconscious. During this same month, Alvarado received a threatening telephone call from a FARC member who accused Alvarado of being a spy disguised as a missionary and warned Alvarado not to go on any more missions.

In November 1998, Alvarado traveled as part of a group of missionaries to a remote Indian village. FARC guerillas detained the missionary group. The FARC let the other members of the missionary group go after two days, but held Alvarado captive for another four days. During that time, the FARC kept Alvarado locked up, threatened him with their weapons and interrogated him continuously and accused him of being a spy. The FARC finally let Alvarado go and told him to carry a message to the CPC that the FARC would not allow any more missions into the area.

After Alvarado was released, he received more threatening telephone calls from FARC members and was told he was a "military objective." Alvarado left for the United States after he received another threatening call in January 1999.

3

Alvarado testified that, if he returned to Colombia, his life would be in danger because the FARC has designated him to be a military objective. Alvarado stated that the FARC believe that his "true mission" was to conduct intelligence tests in the region where his missions took place and that, even if he ceased his missionary work, the FARC would still come after him because they consider him to be a spy who was gathering information.

Alvarado submitted as evidence the 2004 Country Report for Colombia, which stated, inter alia, that among the FARC's primary targets are religious leaders, but that although it sometimes killed, threatened or harassed religious leaders and activists, this was usually done for political rather than religious reasons.

The IJ denied Alvarado all relief. The IJ found that Alvarado's asylum application was untimely. As to the withholding claim, the IJ found that Alvarado had failed to show that it was more likely than not that Alvarado was persecuted or would be persecuted on account of his religion given that the FARC targeted Alvarado because it thought he was a spy. The IJ also denied CAT relief because Alvarado had failed to show that it was more likely than not that a government official or someone acting under an official would consent to Alvarado's torture if he returned to Colombia.

4

Alvarado appealed to the BIA, challenging only the IJ's asylum and withholding of removal rulings.  The BIA dismissed Alvarado's appeal, finding, inter alia, (1) that the incidents Alvarado described did not rise to the level of persecution; and (2) that Alvarado had not shown that any alleged persecution was on account of one of the five protected grounds because the FARC's interest in Alvarado was based on its perception that Alvarado was a spy and not a true evangelist.  The BIA agreed with the IJ's finding that Alvarado did not face a "clear probability of persecution" if returned to Colombia, and therefore he did not merit withholding of removal.  The BIA noted that Alvarado's wife remained "apparently unharmed" in Colombia.  Finally, although Alvarado had not challenged the IJ's denial of CAT relief, the BIA affirmed the IJ's conclusion that Alvarado failed to demonstrate that he more likely than not would be tortured in Colombia.  Alvarado filed this petition for review.

## II.  DISCUSSION

On appeal, Alvarado challenges the denial of withholding of removal and CAT relief.[1]  We lack jurisdiction to review the merits of Alvarado's CAT claim because he failed to raise it before the BIA.  See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003) (concluding that the exhaustion requirement in 8 U.S.C. §

---

[1]Alvarado does not challenge the IJ and the BIA's determinations that his asylum claim was untimely.  Therefore, we do not address this claim further.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286 n.3 (11th Cir. 2003).

1252(d) is jurisdictional and bars review of claims not raised before the BIA);

Amaya-Artunduaga v. U.S. Att'y Gen. 463 F.3d 1247, 1250 (11th Cir. 2006)

(concluding that when a petitioner fails to raise an argument in either his notice of

appeal or brief before the BIA, the petitioner has failed to exhaust his

administrative remedies even if the BIA addressed the issue sua sponte); see also

INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).  Thus, we address the merits of only

Alvarado's withholding of removal claim.[2]

An alien is entitled to withholding of removal if he can show that his life or

freedom would be threatened on account of his race, religion, nationality,

membership in a particular social group or political opinion.  Mendoza v. U.S.

Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003); see also INA § 241(b)(3)(A), 8

U.S.C. § 1231(b)(3)(A).  To qualify for withholding of removal, an alien must

show that it is more likely than not that he will be persecuted or tortured upon his

return to the country in question.  INS v. Cardoza-Fonseca, 480 U.S. 421, 430, 107

S. Ct. 1207, 1212 (1987); Mendoza, 327 F.3d at 1287.  The alien can meet this

burden by showing either: (1) "past persecution in his country based on a protected

---

[2]Because the BIA issued its own decision and did not expressly adopt the IJ's decision as to Alvarado's claim of withholding of removal, we review only the BIA's decision.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  We review legal determinations de novo.  Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).  We review the BIA's factual determinations under the substantial evidence test.  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  Under this highly deferential test, to reverse the BIA's decision "we must find that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

ground," in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) "a future threat to his life or freedom on a protected ground in his country." Mendoza, 327 F.3d at 1287; see also 8 C.F.R. § 208.16(b)(1), (2).

Here, the BIA concluded that Alvarado failed to establish that any past persecution or feared future persecution was "on account of" his religion.[3] After review, we conclude that the record does not compel a finding to the contrary.[4]

It is undisputed that the FARC singled out Alvarado while he was doing missionary work with the Indians in Colombia because it believed Alvarado was a spy working for the United States, and not because of Alvarado's religious beliefs.

---

[3]For the first time on appeal before this Court, Alvarado contends that he was also persecuted "on account of" his membership in a particular social group. We agree with the government that Alvarado did not properly exhaust this claim for several reasons. First, Alvarado's application for asylum and withholding of removal indicated that he was claiming persecution based solely on his religion, and Alvarado did not argue to the IJ that he was persecuted on account of his membership in a particular social group.

Second, Alvarado's brief before the BIA stated in a one-sentence conclusion that Alvarado had a well-founded fear of "persecution based on membership in a protected class." However, Alvarado's BIA brief did not contain any substantive argument or discussion as to persecution on account of his membership in a particular social group and did not identify any particular social group of which he was a member. Alvarado's conclusory reference to being a member of a "protected class" was insufficient to raise a claim that he was persecuted on account of his membership in a particular social group. Because Alvarado did not raise his social group claim before either the IJ or the BIA, we lack jurisdiction to review this claim. See Sundar, 328 F.3d at 1323.

[4]Because we conclude that substantial evidence supports the BIA's finding that Alvarado failed to show that any alleged past persecution was, or any feared future persecution would be, "on account of" his religion, we do not address whether the FARC's actions rise to the level of persecution.

In fact, Alvarado testified that the FARC disbelieved that Alvarado was a missionary and thought that Alvarado was using his missionary work as a cover to conduct intelligence tests in the region. Furthermore, Alvarado testified that if he returned to Colombia, even if he ceased his missionary work, he would continue to be persecuted because of the FARC's belief that he is a spy.[5] Accordingly, substantial evidence supports the BIA's findings that Alvarado failed to establish a sufficient nexus between the FARC's targeting of him and his religion and that Alvarado is statutorily ineligible for withholding of removal.

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

[5]Alvarado does not now and never has argued that the FARC's belief that he was a spy constituted an imputed political opinion.