[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15477
Non-Argument Calendar

_____

Agency Nos. A97-939-591
A97-939-592

ELSA GUTIERREZ QUINTERO,
CARLOS ANDRES SERPA GUTIERREZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 29, 2008)**

Before DUBINA, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Through counsel, Petitioners Elsa Gutierrez Quintero ("Elsa") and her son, Carlos Andres Serpa Gutierrez ("Carlos"), who are both natives and citizens of Colombia, seek review of the Board of Immigration Appeals' ("BIA's") order denying their motions to reopen proceedings. The Petitioners contend that the BIA abused its discretion in denying their motions to reopen because they both established prima facie eligibility for adjustment of status under the Cuban Adjustment Act, Pub.L. No. 89-732, 80 Stat. 1161 (1966) (reproduced as historical note to 8 U.S.C. § 1255) ("CAA"). For the reasons set forth more fully below, we deny the petition for review.

On April 6, 2004,[1] before the Petitioners were served with the notices to appear ("NTAs"), Elsa filed an application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231(b)(3), 8 C.F.R. § 208.16(c). Carlos[2] was included in the application. Elsa indicated on the application that she sought relief based upon her political opinion and membership in a particular social group.

---

[1] Elsa was admitted to the United States on or about January 21, 2002.

[2] Elsa's younger son, Juan Camilo Serpa Gutierrez, was also included in the application, but he was not a party in Elsa's or Carlos's motions to reopen, the denial of which is the subject of this petition for review.

On September 30, 2004, Elsa filed a "Motion Regarding the One Year Bar to Her Asylum Claim" in which she asserted several facts, including: (1) "In April of 2003 [Elsa] was informed that her husband had been taken at the hands of the paramilitaries," and (2) she had "filed her I-589 Asylum application less than one year after her husband's abduction. The husband is still absent." Elsa framed the issue in the motion as "Does the disappearance of an immediate relative at the hands of [the] same group that is persecuting [Elsa] amount to a changed circumstance within the meaning of 9 C.F.R. 208.4(4)?"

At the October 5, 2005, removal hearing, Elsa testified that she was married to Carlos Humberto Rey ("Carlos Humberto"), who was also from Colombia, but April 2003 was the last time Elsa knew her husband's whereabouts. Elsa explained to the Immigration Judge ("IJ") that her husband was in politics when he disappeared in April 2003, but Elsa did not know the exact date of his disappearance, did not have a newspaper article announcing his disappearance, did not have a police report investigating his disappearance, and did not report her husband missing either to authorities in Colombia or to the Colombian embassy in the United States.

In her written order, the IJ denied Elsa's application for asylum, withholding of removal and CAT relief, and ordered the Petitioners removed to Colombia. In her oral decision, the IJ found that the Petitioners were statutorily ineligible to

3

apply for asylum because Elsa failed to demonstrate any extraordinary circumstances to excuse her untimely filing of her application. Specifically, the IJ found incredible Elsa's claim that her husband was missing in light of the fact Elsa had not provided any corroborating evidence of his disappearance and no one, including Elsa, had reported the husband missing.[3]

On March 10, 2006, while the appeal was pending, Elsa filed a motion to remand to the IJ for a hearing on her application for adjustment of status.[4] Elsa attached several documents to the motion, including, inter alia: (1) a copy of Elsa's marriage certificate; and (2) a copy of Elsa's I-485 application for adjustment of status. The marriage certificate indicated that Elsa married Jesus De Armas ("De Armas") on December 24, 2005, and it also stated that Elsa's previous marriage had ended in divorce on May 4, 2005.

The BIA dismissed the Petitioners' appeal and denied Elsa's motion to remand. With respect to the motion to remand, the BIA concluded that Elsa failed to establish that she was prima facie eligible for adjustment of status. Specifically, the BIA pointed out that Elsa had testified at the October 5, 2005, asylum hearing

---

[3] The IJ also considered the underlying merits of the asylum application, but concluded that the Petitioners had failed to "credibly demonstrate that they suffered past persecution or that they have a well-founded fear of persecution in Colombia on account of their race, religion, nationality, membership in a particular social group or political opinion."

[4] Elsa's youngest son, Juan, was also included in the motion to remand.

4

that she was "married," but that her Colombian husband had disappeared in April 2003, and she had not "heard a thing from him or about him." However, the BIA noted that Elsa's marriage license reflected that she had been divorced from her first husband since May 4, 2005, "five months before she relayed to the [IJ] that she was 'married.'" Also important to the BIA was the fact that Elsa had not indicated to the IJ at the October 2005 hearing that she was seeking a divorce from her husband, and had not produced any documents to corroborate her divorce. Thus, the BIA concluded, the record did not contain sufficient evidence to establish the validity of Elsa's present marriage.

In response to the BIA's order, Elsa filed a motion to reopen for adjustment of status based upon her December 24, 2005, marriage to De Armas, whom, Elsa noted, was a Cuban national and a United States Lawful Permanent Resident ("LPR"). Elsa asserted that she was statutorily eligible for adjustment of status pursuant to the CAA because, inter alia, she was legally married to De Armas. Elsa included with her motion an untranslated copy of her Colombian divorce decree, and stated that she would submit a certified translation of the document as soon as practicable.

Carlos also filed a motion to reopen. Carlos claimed that he, too, was eligible for adjustment of status under the CAA based upon his bona fide marriage to a Cuban citizen residing as a parolee in the United States.

5

On October 22, 2007, the BIA denied both motions to reopen.[5] The BIA stated that Elsa's motion to reopen was based on the same underlying marriage as she claimed in her previous motion. However, "[b]ecause the lead respondent has still not provided conclusive evidence of the validity of her present marriage, [the BIA] conclude[d that] the respondent has once again failed to establish prima facie eligibility for adjustment of status." The BIA noted that it could not consider the untranslated photocopy of the document Elsa claimed was her Colombian divorce decree. The BIA went on to state that, even if Elsa's present marriage were valid, she had not established that she had an immigrant visa immediately available to her in light of the fact that her alleged husband was not a United States Citizen.

With respect to Carlos's motion to reopen, the BIA stated that Carlos also did not establish that he was prima facie eligible to adjust his status under 8 U.S.C. § 1255 because his wife's current immigration status as parolee did not place Carlos in any preferential visa category. The BIA noted that

> The lone piece of evidence [Carlos] has submitted in support of his spouse's alleged adjustment application [under the CAA] is a computer-generated shipment tracking document, which, apart from

---

[5] Elsa filed a motion to reconsider the BIA's order, and with the motion she included a translated version of her Colombian divorce decree, which had a seal dated May 4, 2005. However, the BIA denied the Petitioners' motion to reconsider, and Petitioners have not petitioned this Court for review of that denial. As such, the translated document is also not before us. See 8 U.S.C. § 1252(b)(4)(A) ("the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"); Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1256 n.7 (11th Cir. 2006) (declining to consider a document that was not part of the administrative record on appeal).

6

reflecting that a package was shipped from Miami to Chicago, in no way reflects who shipped the package or to whom it was sent, much less what the contents of the package might have been.

I.

We review the BIA's denial of a motion to reopen proceedings for abuse of discretion. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Our review is "limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (internal quotation omitted); see also 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen is within the discretion of the [BIA]"). To the extent that the BIA's decision was based on a legal determination, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).

An alien may file a motion to reopen his removal order. INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c)(1). The motion to reopen "shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). Motions to reopen may be granted if there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing. See 8 C.F.R. § 1003.2(c)(1). The BIA may deny a motion to reopen if the alien fails to establish a prima facie case. Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001). Moreover, the BIA "has

7

discretion to deny a motion to reopen even if the moving party has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a).

The CAA provides:

That, notwithstanding the provisions of section 245(c) of the Immigration and Nationality Act, the status of any alien who is a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959, and has been physically present in the United States for at least one year, may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if the alien makes an application for such adjustment, and the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence. . . . The provisions of this Act shall be applicable to the spouse and child of any alien described in this subsection, regardless of their citizenship and place of birth, who are residing with such alien in the United States.

Pub.L. 89-732, 80 Stat. 1161, § 1. We have stated that "[t]he [DHS] . . . clearly has discretion under the Act to adjust the status of the spouse and child of a Cuban alien who has been admitted for permanent residence. . . [, h]owever, this discretion only extends to the spouse and child if they are statutorily eligible." Gonzalez v. McNary, 980 F.2d 1418, 1420 (11th Cir. 1993).

The Supreme Court has explained that in cases on appeal where the BIA has not addressed a particular issue that a petitioner put before it, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Orlando Ventura, 537 U.S. 12, 16, 123 S.Ct.

8

353, 355, 154 L.Ed.2d 272 (2002) (internal quotation marks omitted). We determined in Calle v. U.S. Att'y General, 504 F.3d 1324, 1329-30 (11th Cir. 2007), that "rare circumstances" were present in an appeal because the issue the BIA failed to address was legal in nature, not factual, and required an "objective, procedural inquiry" concerning whether the petitioner specified errors of law and supported them with pertinent authority or did not.

Elsa's motion to reopen was properly denied. Although the Petitioners argue that Elsa was not required to produce "conclusive" proof of her prima facie eligibility for adjustment of status under the CAA, Elsa was, nonetheless, required to support her motion to reopen "by affidavits or other evidentiary material." See 8 C.F.R. § 1003.2(c)(1). With her subsequent motion to reopen, the only evidence that Elsa provided to support her claim that she was divorced from her first husband was an untranslated document, and it was within the BIA's discretion to decline to consider that document. See 8 C.F.R. § 1003.33 ("Any foreign language document offered by a party in a proceeding shall be accompanied by an English language translation and a certification signed by the translator that must be printed legibly or typed"). Thus, based on the evidence contained in the record, Elsa failed to establish with evidentiary material that she was prima facie eligible for adjustment of status as a "spouse" of a Cuban alien for purposes of the CAA because, by her own testimony, it was unclear what the status of her first marriage

9

was.  See CAA, Pub.L. 89-732, 80 Stat. 1161; 8 C.F.R. § 1003.2(c)(1).

Carlos's motion to reopen was also properly denied.  As the BIA pointed out, the DHL tracking history that Carlos provided to corroborate his claim that his spouse filed an application under the CAA  "in no way reflects who shipped the package or to whom it was sent, much less what the contents of the package might have been."  Significantly, Carlos failed to establish with any evidentiary material that his spouse is "eligible to receive an immigrant visa and is admissible to the United States for permanent residence."  See  CAA, Pub.L. 89-732, 80 Stat. 1161.  Therefore, although the BIA stated that Carlos failed to establish his prima facie eligibility for adjustment of status under 8 U.S.C. § 1255, his motion to reopen was nonetheless properly denied because he also failed to establish his prima facie eligibility for adjustment of status under the CAA.  See CAA, Pub.L. 89-732, 80 Stat. 1161; 8 C.F.R. § 1003.2(c)(1); Calle, 504 F.3d at 1330; Abdi, 430 F.3d at 1149.

In light of the foregoing, the petition for review is

**DENIED**.