[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 4, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-10273
Non-Argument Calendar

_____

BIA Nos. A97-948-067 & A97-948-068

RAFAEL M. HERNANDEZ,
PAULA A. HERNANDEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 4, 2008)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Rafael Hernandez and his daughter, Paula Hernandez, petition for review of the final order of the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge's ("IJ") denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition.

## I. BACKGROUND

Hernandez and his daughter Paula, both natives and citizens of Peru, arrived in the United States in 2001 as nonimmigrant visitors. On October 7, 2004, the Department of Homeland Security ("DHS") issued notices to appear, charging Hernandez and Paula with removability for staying in the United States past the authorized period, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). Hernandez and Paula conceded removability.

On May 20, 2005, which was almost four years after arrival in the United States, Hernandez filed an application for asylum, withholding of removal, and CAT relief. According to Hernandez's application and hearing testimony, Hernandez was a businessman living in Lima, Peru, who owned several companies and was involved in the import and sale of automobiles. From 1994 to 1996, Hernandez supported then-president Alberto Fujimori and his political party, Peru 2000. Hernandez donated large amounts of money to Peru 2000, participated as a

2

coordinator for Fujimori's 1995 re-election, and openly expressed his support for Fujimori's ideas before friends and colleagues.

In 1994, Hernandez began receiving threatening phone calls about three times a week to his cell, work, and home phone numbers. The callers identified themselves as members of the Shining Path, a terrorist organization, and demanded money in exchange for the safety of Hernandez and his family. According to Hernandez, the Shining Path called him "[b]ecause I was cooperating with the party that was confronting them and was . . . at war with them. And due to my economic situation they thought that they could ask money from me." Hernandez reported the threats to the police, but the police could not protect him.

In May 1996, Hernandez's car was forced off the road by two cars. The drivers identified themselves as Shining Path members and told Hernandez he had to listen to their request and cooperate with their fight. The Shining Path members could not detain Hernandez because emergency vehicles arrived to help. Hernandez suffered blows to the head and wounds to his back. In early 2000, Hernandez's maid was beat up, and the individuals told her they knew all of Hernandez's movements and that Hernandez should give them money for their armed fight. The next incident occurred in November 2000, when three individuals attacked Hernandez as he left his house and attempted to kidnap him. The individuals identified themselves as members of the Shining Path and as the

3

people who were making the calls. They forced Hernandez into a vehicle, but fled when they heard police sirens.

Hernandez testified he is afraid to return to Peru because "I'm an easy target for them based on my political opinion and my cooperation with Alberto Fujimori's campaign," and that he feared for his family's lives. Hernandez submitted copies of letters he had written to police requesting protection following these incidents. The IJ also considered other exhibits including country reports and newspaper articles.

The IJ found that Hernandez's application for asylum was untimely. As to withholding of removal, the IJ found Hernandez failed to establish his life or freedom would be threatened based on a protected ground and current country conditions. Finally, the IJ rejected Hernandez's request for CAT relief.

Hernandez appealed to the BIA, challenging only the IJ's withholding of removal ruling. The BIA dismissed Hernandez's appeal, finding that Hernandez failed to carry his burden of establishing he suffered past persecution or had a well-founded fear of future persecution on account of a protected ground and thus could not establish eligibility for withholding of removal. Hernandez filed this petition for review.

## II. DISCUSSION

4

On appeal, Hernandez challenges the denial of withholding of removal.[1]  An alien seeking withholding of removal must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A).  In other words, the alien has the burden of proof to show that he "more-likely-than-not" would be persecuted on account of one of the five protected grounds if he returned to the country in question.  See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  The alien can meet this burden by showing either: (1) "past persecution in his country based on a protected ground," in which case a rebuttable presumption is created that his life or freedom would be threatened if he returned to his country; or (2) "a future threat to his life or freedom on a protected ground in his country."  Id.; see also 8 C.F.R. § 208.16(b)(1), (2).

Here, the BIA concluded Hernandez failed to establish that any past persecution or feared future persecution was "on account of" any protected

---

[1]Because the BIA issued its own decision and did not expressly adopt the IJ's decision as to Hernandez's claim of withholding of removal, we review only the BIA's decision.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  We review legal determinations de novo.  Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001).  We review the BIA's factual determinations under the substantial evidence test.  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  Under this highly deferential test, to reverse the BIA's decision, "we must find that the record not only supports reversal, but compels it."  Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).  The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal.  Adefemi, 386 F.3d at 1027.

5

ground–including actual or imputed political opinion, as Hernandez argues in his briefs on appeal. After review, we conclude that the record does not compel a finding to the contrary.[2]

Although the cumulative effects of the threatening phone calls, two attempted kidnappings, and beating of Hernandez's maid may have established past persecution, Hernandez did not present compelling evidence that the persecution was motivated by any protected ground. According to Hernandez's descriptions of the phone calls and the attacks, the Shining Path members never mentioned his political affiliation but rather sought only his money and cooperation. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006) ("[E]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground."). In fact, Hernandez himself testified that it was due to his "economic situation" that they thought they could get money from him. Hernandez produced no evidence that the Shining Path members even knew of his political activity except for his own conclusory allegations. For these same

_____

[2]Because we conclude that substantial evidence supports the BIA's finding that Hernandez failed to show past or feared future persecution on account of a protected ground, we need not address whether the actions of the Shining Path members rise to the level of persecution.

reasons, Hernandez failed to establish a well-founded fear of future persecution based on political opinion. Accordingly, substantial evidence supports the BIA's findings that Hernandez failed to establish that the Shining Path targeted him because of his political opinion and that Hernandez is statutorily ineligible for withholding of removal.[3]

**PETITION DENIED**.

---

[3]Hernandez also requests this Court remand the case to allow Paula to file a separate application for withholding of removal under Delgado v. U.S. Att'y Gen, 487 F.3d 855, 862 (11th Cir. 2007), which held there are no derivative benefits for withholding of removal. In Delgado, this Court concluded that the husband and son were entitled to withholding of removal based on their own original applications. Id. This Court concluded, however, that the wife, who did not file her own application, had no derivative benefits from her husband's withholding of removal claim. Id. at 359, 862. Notably, the Delgado Court did not remand to permit the wife to file her own application, but rather denied her petition. Id. at 862. Thus, nothing in Delgado supports remanding the case for Paula to file her own application. In addition, Paula raised no arguments regarding her entitlement to withholding of removal independent of Hernandez's before either the IJ or the BIA, and we decline to consider her claim independently for that reason as well.