[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2009
THOMAS K. KAHN
CLERK

No. 08-13702
Non-Argument Calendar
_____

Agency No. A98-115-589

CHUN YUN ZENG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(March 24, 2009)

Before BIRCH, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Chun Yun Zeng, proceeding pro se, seeks review of the Board of

Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c). Zeng argues that the BIA erred in adopting and affirming the IJ's decision because the IJ's findings were not supported by substantial evidence. Zeng also contends that the BIA did not conduct a meaningful analysis of whether she had a well-founded fear of persecution based on a pattern or practice of persons similarly situated to her, namely Falun Gong practitioners. We disagree with the former argument and lack jurisdiction to consider the latter. Accordingly, we DENY the petition in part, and DISMISS it in part.

## I. BACKGROUND

Zeng, a female citizen of the People's Republic of China ("China"), entered the United States in August 2004. Administrative Record ("AR") at 335. The Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging Zeng as removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). Id. at 334-35. In a motion to change venue to Orlando, Florida, Zeng, through counsel, admitted the factual allegations contained in the NTA and conceded removability. Id. at 292.

2

In May 2005, Zeng filed her application for asylum, withholding of removal, and protection under CAT.  Id. at 192-262.[1]  In her application, Zeng indicated that she was seeking asylum and withholding of removal based on political opinion and her membership in a particular social group.  Id. at 196.  Zeng's application included, among other things, a personal statement, a letter from a friend in China (who remarked that Zeng was lucky to be living in America, where she would not be subjected to the Chinese government's intensified persecution of Falun Gong members), a letter from her parents, and several pictures of Zeng practicing Falun Gong in the United States.  Id. at 201-03, 207, 244-46, 256-62.

In her personal statement attached to the application, Zeng stated that in 1999, her good friend, Lin Ping ("Ping"), urged her to learn the tenants of Falun Gong, which was not yet prohibited by the Chinese government.  Id. at 201.  Zeng asserted that she did not have any real interest in Falun Gong at that time and chose not to pursue it because she was "very busy and . . . fond of playing."  Id. According to Zeng, the Chinese government began to crack down on Falun Gong practitioners in the summer of 1999.  Id.  In September 2002, Zeng's friend, Ping, was targeted for arrest by the government for secretly preaching about and practicing Falun Gong.  Id. at 201-02.  Ping went into hiding to avoid arrest and

---

[1] The asylum application is time-stamped "May 4, 2006," id. at 192,  but the record indicates that the application was filed in May 2005.  Id. at 109.

3

Zeng agreed to look after Ping's Falun Gong books and flyers in her absence. Id. at 202. Zeng alleged that, shortly thereafter, two policemen questioned her about Ping's whereabouts, but she refused to cooperate with them. Id.

Zeng then recounted how she began to read Ping's Falun Gong materials which Ping had hidden under her bed and began to develop an interest in the movement. Id. According to Zeng, she began to publicly express her displeasure regarding the government's ban on Falun Gong. In April 2004, three police officers searched her home, confiscated Ping's Falun Gong materials, handcuffed Zeng and escorted her to the local police precinct. Id. According to Zeng, she was detained by the police for six days, subjected to constant interrogation and beaten with a rubber baton on her hips and thighs. Id. She was released after her parents posted an 8000 RMB[2] bond. Zeng stated that although the police ultimately determined that she was not a Falun Gong practitioner, she was required to periodically report to the precinct for "thought transformation and education" because of her "profound anti-government mind."[3] AR at 202.

_____

[2] The renminbi, or the "people's currency," whose principal unit is the yuan.

[3] Zeng's asylum application and subsequent testimony also described that she was fined 500 RMB and forced to undergo a gynecological examination after she refused to attend a scheduled examination that was mandated by the Chinese government's family planning policies. Id. at 103-04, 203. However, she did not argue before the BIA that her opposition to China's family planning policies entitled her to asylum, and she advances no such argument in her appellate brief. Consequently, she has abandoned any argument regarding China's family planning policies. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1282 n.12 (11th Cir. 2001) (stating that issues not argued in the initial brief on appeal are deemed abandoned).

As previously noted, Zeng's parents also submitted a letter on her behalf. They described Zeng's growing indignation at the Chinese government's mistreatment of Falun Gong practitioners and detailed the events surrounding Zeng's arrest in April 2004. Id. at 244-45. Notably, although her parents recounted their fear that Zeng might be beaten by the police because of her stubbornness, they did not state that she was, in fact, physically beaten. Id. at 245. Her parents stated that Zeng was detained for six days and released after they paid 8000 RMB. Id.

At Zeng's individual hearing, the IJ noted that Zeng previously had admitted the charges in the NTA and conceded removability. Id. at 92. The following items were submitted into evidence: (1) the NTA; (2) Zeng's asylum application; and (3) the United States Department of State China Country Report on Human Rights Practices for 2005 ("2005 Country Report"). Id. at 263, 192-262, 127-190.

Zheng's testimony at her hearing before the IJ substantially mirrored the narrative provided in her personal statement. Zeng did elaborate on a few issues, however. Zeng testified that her parents posted an 8000 RMB bond on 26 April 2004. The money was returned to her parents the very same day after the authorities determined that Zeng was not a Falun Gong practitioner. Id. at 120. When questioned by the IJ about why the police would require a bond only to return it her parents the same day, Zeng ascribed it to "corruption" amongst

5

Chinese officials.  Id.  Zeng also testified that she did not receive any medical care for the injuries she sustained while detained and that she was now "okay."  Id. at 102, 123.

After her release, Zeng testified that she continued to live at home with her parents and did not have any more problems, but she described herself as being in hiding.  Id. at 115.  Zeng admitted that her parents' letter did not state that she went into hiding after her release from detention nor that the police continued to look for her.  Id. at 115-16.  Zeng was unresponsive when asked why she did not mention that she went into hiding in her initial application.  Id. at 116.

According to Zeng's testimony, she left China and arrived in the United States in August 2004.  Id. at 104.  In the summer of 2005, she practiced Falun Gong in New York.  Id. at 105.  Zeng moved to Florida in May 2006 and admitted that she did not present any documentary evidence that she was involved in Falun Gong since arriving in Florida.  Id.  Zeng stated that she practiced Falun Gong alone at home about three to four days a week, but no one witnessed her doing so.  Id. at 106-07.  Finally, Zeng stated that she was afraid of returning to China because she believes that government is still looking for her and would jail her upon her return because of her support of Falun Gong.  Id. at 107-08.

As previously noted, the 2005 Country Report was also considered by the IJ. It explained that Falun Gong was a spiritual movement, or cult, and that China

began a crackdown on Falun Gong adherents in 1999 after banning its practice. Id. at 129, 145, 148-49. Since that time, there have been reports that several hundred to a few thousand Falun Gong adherents have died in custody due to torture, abuse, or neglect, hundreds were confined to psychiatric hospitals and were reportedly subjected to electric shock treatments, and thousands were sent to reeducation-through-labor camps. Id. at 129-132, 148-49. Since the government banned Falun Gong, "the mere belief in the discipline (even without any public manifestation of its tenets) has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment." Id. at 148. Although the vast majority of detained practitioners had been released, many were detained again after release, thousands reportedly remained in reeducation camps, and "[t]hose identified by the government as "core leaders" were singled out for particularly harsh treatment." Id.

The IJ denied Zeng's application for asylum, withholding of removal, and CAT relief, and ordered her removed to China. Id. at 39, 46. In an oral decision, the IJ found that Zeng was not credible. Id. at 41-45. In the process of determining her credibility, the IJ also remarked that Zeng's non-testimonial evidence undermined rather than supported her claim. Id. at 41-42. Specifically, the IJ took issue with the fact that Zeng's documentary evidence – in the form of her parents' letter – did not mention the abuse that Zeng alleged. Id. at 42. The IJ

7

also discussed the pictures of Zeng practicing Falun Gong in 2005, but noted that there was no evidence presented of Zeng's recent Falun Gong participation. Id. at 42-43. The IJ appeared to rest his decision to deny her relief based on the adverse credibility finding because he did not explicitly state that Zeng did not suffer past persecution or had a well-founded fear of persecution based on a protected ground. However, the IJ did state that Zeng had not established any basis for relief under the CAT because she had not shown a clear probability that she would be tortured if she returned to China. Id. at 45.

Zeng appealed the IJ's decision to the BIA, and argued that the IJ's adverse credibility finding was not supported by the record, that the harm she suffered amounted to past persecution, and that there was a clear probability that she would be persecuted and tortured if she returned to China. Id. at 12-19. The BIA adopted and affirmed the IJ's decision insofar as the IJ denied all of Zeng's applications. Id. at 2. Zeng now petitions us for review of the BIA's decision.

## II. DISCUSSION

Zeng argues that the BIA erred in both adopting and affirming the IJ's denial of her applications for relief and in not conducting a meaningful analysis of whether she had a well-founded fear of persecution based on a pattern or practice of persons similarly situated to her, namely Falun Gong practitioners.

When the BIA issues a decision, we review only that decision, except to the

8

extent that the BIA expressly adopts the IJ's decision. See Al Najjar, 257 F.3d at 1284. We review the BIA's legal determinations de novo. See Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). Factual determinations, however, are reviewed under the "highly deferential substantial evidence test," which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). "We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1027 (quotation marks and citation omitted). However, "we cannot find, or consider, facts not raised in the administrative forum, nor can we reweigh the evidence from scratch." Id. (quotation marks and citation omitted).

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General has the discretion to grant asylum if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is defined as an individual who is unwilling or unable to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar, 257 F.3d at 1284. When an alien fails to make a claim before the BIA, she has failed to exhaust her administrative remedies, and we lack jurisdiction to review those claims. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). To establish asylum eligibility, the alien may, with specific and credible evidence, establish a "well-founded fear" that a statutorily listed factor will cause such future persecution. 8 C.F.R. § 208.13(a), (b); see Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of [a statutory factor]." Al Najjar, 257 F.3d at 1287 (quotation marks and citation omitted). An applicant's fear of persecution must be both "subjectively genuine and objectively reasonable." Id. at 1289; see also 8 C.F.R. § 208.13(b)(2).

To establish past persecution, the alien "must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). The asylum applicant does not need to show that she will be singled out for persecution if she establishes a "pattern or practice" in his country of "persecution of a group of persons similarly situated" and a reasonable fear of persecution on account of a protected ground based on her inclusion in that group. 8 C.F.R.

10

§ 208.13(b)(2)(iii)(A).

Unlike the discretionary authority to grant asylum, the Attorney General is required to grant withholding of removal to an alien who establishes that her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). The standard for establishing eligibility for withholding of removal is higher than for asylum, so an alien who fails to establish entitlement to asylum necessarily fails to establish eligibility for withholding of removal. See Al Najjar, 257 F.3d at 1293.

Although the term is not defined by the INA, we have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotation marks, citation, and alterations omitted). Evidence of minor beatings and brief detentions does not constitute past persecution. See Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (petitioner's "minor beating" that resulted in only "scratches and bruises" did not amount to persecution). With respect to Falun Gong, we have noted that Falun Gong participation alone is not a basis for establishing asylum. Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1291-92 (11th Cir. 2006) (per curiam). Finally, to be entitled to relief under the CAT, an applicant must establish that it is more likely than not

11

that she would be tortured at the instigation of or with the consent or acquiescence of the government. 8 C.F.R. § 208.16(c)(2).

Zeng did not explicitly raise the argument to the BIA that she had a well-founded fear of persecution based on a pattern or practice of persecution of Falun Gong practitioners by the Chinese government. Consequently, we lack jurisdiction to consider such a challenge at this point. See Amaya-Artunduaga, 463 F.3d at 1250.

As regards Zeng's other claims, substantial evidence supports the BIA's conclusion that Zeng did not suffer past persecution. In light of our precedent, Zeng's detention and the harm she suffered during her detention were not severe enough to constitute persecution. See Djonda, 514 F.3d at 1174; Zheng, 451 F.3d at 1291-92. The record also supports the BIA's determination that she did not have a well-founded fear of persecution because there is no indication, even if the Chinese government were aware of her Falun Gong participation during her stay in the United States, that she would suffer harm sufficient to amount to persecution if returned to China. The record indicates that Chinese authorities cleared Zeng of any wrongdoing after her detention in April 2004. Moreover, Zeng has not publicly participated in any Falun Gong activity since 2005. Given the highly deferential nature of our review, we cannot say that the record compels a conclusion contrary to that reached by the BIA.

12

Since Zeng has not met the burden necessary to qualify for asylum, it follows that her withholding of removal claim must also fail.  See Al Najjar, 257 F.3d at 1293.  Lastly, Zeng offered no evidence that the Chinese government or anyone acting on its behalf would intentionally inflict severe pain or suffering for the purpose of punishing her for her Falun Gong participation.  Accordingly, she is not entitled to relief under the CAT.

## III.  CONCLUSION

Zeng seeks review of the BIA's decision affirming the IJ's denial of  her application for asylum, withholding of removal and relief under the CAT.  Zeng argues that the BIA erred in adopting and affirming the IJ's decision because the IJ's findings were not supported by substantial evidence.  Zeng also contends that the BIA did not conduct a meaningful analysis of whether she had a well-founded fear of persecution based on a pattern or practice of persons similarly situated to her, namely Falun Gong practitioners.  After careful review of the record and the parties' briefs, we conclude that BIA's decision was supported by substantial evidence.  Because we do not have jurisdiction to entertain Zeng's second argument, we DENY the petition in part, and DISMISS it in part.

**DENIED, in part and DISMISSED, in part.**